THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. MARGARET HUGHES.

1. CARRIER — *Passenger* — *Time to Alight* — *Negligence*. It is negligence on the part of a railroad company for those in charge of a passenger train to induce a passenger to leave the train while in motion, and a gross disregard of the duty it owes to him not to stop the train entirely and give the passenger ample time and opportunity to alight.

2. CONTRIBUTORY NEGLIGENCE, *How Determined*. It is not contributory negligence *per se* for a passenger to alight from a moving

55 491
57 39

55 491
62 97

55 491
69 844

55 491
71 7

55 491
72 571

55 491
78 40

55 491
82 741
182 742

train; but the question as to whether the act constitutes negligence depends upon whether the danger was so obvious that a prudent person would not under the circumstances have made the attempt, and is to be determined by the jury upon a consideration of the rate of speed the train had acquired, the place, the conduct of those in charge of the train, and all the circumstances connected with the act of alighting.

3. —— *Question for Jury.* The mere fact that the passenger acts upon the advice or command of the conductor would not justify him in attempting to alight from the train when it was obviously dangerous to do so, and the fault of the conductor in this respect will not relieve the passenger from the consequences of his own reckless acts. But if the train is moving very slowly, and the passenger, upon the suggestion or request of those in charge of the train, attempts to alight and is injured, it is a proper question for the jury whether it was a prudent or ordinarily careful act, or whether it was a rash and reckless exposure to peril and hazard.

4. Recovery, *When not Barred.* A slight inattention to duty; which is not the proximate cause of the injury, does not bar a recovery for injury to a passenger resulting from the ordinary or gross negligence of the railroad company.

5. Expectancy of Life — *Estimate, how Made.* While mortality tables are admissible in evidence to assist the jury in estimating the expectancy of life, they are not indispensable, and the jury may make their estimate from the age, health, habits and the physical condition of the person at the time of his death; and upon the testimony in this case, it is *held* that the verdict cannot be disturbed on the ground that excessive damages were allowed.

*Error from Osage District Court.*

This action was brought in the district court of Osage county by *Margaret Hughes* against *The Atchison, Topeka & Santa Fe Railroad Company*, to recover damages for the death of her husband, John Hughes. The petition alleges, among other things —

"That on or about 1 o'clock of the morning of March 20, 1890, the said John Hughes, in company with his relatives and friends, being at the station of Scranton, on the line of the defendant's railroad, and being desirous of going to the station of Peterton, also on the line of defendant's railroad, purchased and paid for, from the ticket agent of defendant at Scranton, a

ticket authorizing and empowering him to ride and journey upon a passenger train of the defendants, then about to arrive at Scranton, on its journey to Peterton and points beyond; that in a short time thereafter said train arrived, and the said John Hughes went on board said train and took passage for said station of Peterton; that said train proceeded on its journey toward Peterton; that the conductor of said train and in charge thereof took up the ticket of the said John Hughes and was advised of the fact that said John Hughes and those with him were to get off at Peterton; that, as the train approached the station of Peterton, the conductor informed and gave said John Hughes and his friends who were with him to be informed that the train would not stop at Peterton, but would slack up speed so that they might leave the train at the station in safety, and that they must do so; that the train slackened its speed, and in obedience to the commands, request, invitation and solicitation of the said conductor all the persons in company with the said John Hughes left the train at a place which the said conductor gave all of them to be informed and understand was the station of Peterton; that the said station of Peterton was unlighted; that the train had run past the station and platform, and was then, notwithstanding the speed had been slackened, running at a dangerous rate of speed to leave the train; that the said John Hughes, having but little experience in railroad traveling, and relying upon the said commands, request, invitation and solicitation of the said conductor, with all the others of his party, left the train, being deceived by the said conductor as to the place where they should alight, and by the darkness of the place, and as to the speed of the train; that the said John Hughes was the last to alight; that the conductor knew that they all intended to alight, and while alighting from the train, then knew that it was dangerous to life and limb, and which the said John Hughes did not know, nor did he have reasonable means to know; that the whole party were hurried off the train by the con-

ductor; that one of the party was severely injured, and the said John Hughes then received fatal injuries from which he died in a few moments afterward; that the said John Hughes was in the exercise of care at the time; and that his death was caused and produced by the negligence and carelessness of said conductor in not stopping said train at the platform and station of Peterton, and his criminal and willful negligence in compelling, commanding, requiring, inviting and soliciting the said John Hughes to leave the train in the night time at an unlighted station ground, at a speed known to be dangerous to him, and represented to be safe to said John Hughes to leave the train, and in the further negligence and carelessness of the defendant in not requiring the train to stop, in not by rule and order compelling its conductors not to put off passengers while the trains were in motion, and in keeping an unlighted station at Peterton; and for all which negligence and carelessness the defendant is by law responsible and liable; that, at the time of his death, said Hughes was 40 years of age, the head of said family, supported wholly by his labor, and that by reason of his death his said next of kin and heirs at law have suffered and sustained pecuniary damage and loss by his death to the extent of $10,000; and that this action is brought to recover the same for their exclusive benefit and use, as well as the sum of $5,000 for vindictive damages and smart-money by reason of the gross acts of negligence of defendant heretofore recited, and for costs."

The answer of the defendant was a general denial, and an averment of contributory negligence. In the second defense, it is alleged that the injuries sustained by Hughes were wholly the result of his attempt to leave the train while the same was in motion and while he was under the influence of intoxicating liquor, and in a condition produced by the use of intoxicating liquor such as to render him unable to

alight safely from a train in motion. No reply was filed.

The case was tried at the April term, 1890, and, upon the testimony, the jury found that John Hughes came to his death by reason of the negligence of the conductor and brakeman in failing to stop the train at the station of Peterton and see him safely off. It was found that they required him to get off near the depot while the train was in motion and running at a dangerous rate of speed. It was further found that he was 40 years of age, that his occupation was a coal-miner, that he was capable of earning $42 per month, and that he might be reasonably expected to earn such wages for a period of 25 years. The general verdict was in favor of the plaintiff below, and the damages awarded were $7,830. *The Railroad Company* brings the case here for review.

*A. A. Hurd, W. Littlefield,* and *O. J. Wood,* for plaintiff in error.

*Henry B. Hughbanks,* and *Frank A. Hay,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : The first contention of the railroad company is that, upon the pleadings, judgment should have been given in its favor. The basis of this claim is that contributory negligence was set up as a defense in the answer of the railroad company, and that as there was no reply or denial of the averment of contributory negligence it must be taken as true. The petition alleged that the deceased was in the exercise of care when he attempted to alight from the train upon the order of the conductor, and the answer of the company contained a general denial of all the aver-

ments of the petition. If any reply was necessary to close the issue it appears to have been overlooked and waived by the parties and to have been regarded as unnecessary by the court. The parties evidently proceeded upon the theory that an issue had been fairly raised as to whether Hughes was in the exercise of due care when the fatality occurred. A great part of the testimony produced at the instance of the parties bore upon that question, and no objection was made by the railroad company that the pleadings were insufficient, nor that the absence of a reply entitled it to a judgment. At the commencement of the trial an objection was made to the admission of any testimony, but the ground of the objection was that the petition failed to state sufficient facts to constitute a cause of action ; and at the end of the testimony offered to sustain the allegations of the petition, a demurrer to the evidence was interposed, which was overruled. Neither of these objections called the attention of the court to the necessity or omission of a reply. In view of the conduct of the parties in the course of the trial, the objection that there was no reply comes too late, and cannot be heard for the first time in the supreme court.

The next contention of the railroad company is that the conduct of the deceased in attempting to alight from the train on a dark night when it was in motion was reckless negligence, although he may have been invited or commanded by the conductor to do so, and therefore the court erred in refusing the request of the defendant to instruct the jury to return a verdict in its favor. On the night of March 19, 1890, John Hughes, his boy, who was about 11 years old, James O'Melia, his father-in-law, who was about 68 years old, and Alex. O'Melia, his brother-in-law, about 26 years

of age, boarded a regular passenger-train of the railroad
company at Scranton for the purpose of riding to Peter-
ton, a station about 12 miles away.    Hughes and the
elder O'Melia took seats near together in the front end
of a coach, while the younger O'Melia and the boy
found seats in the rear end of the same coach.    Alex.
O'Melia had procured the tickets for the party, and
they were taken up by the conductor shortly after the
departure from Scranton.    The testimony of the plain-
tiff below tended to show that before reaching Peterton
the conductor told Alex. O'Melia that the train would
not come to a full stop at Peterton but would only slow
up for them to get off, when Alex. responded that
the train ought to be stopped to enable the two older
men who were sitting at the front end of the coach to
get off, and in reply the conductor advised him to take
care of himself and let the others take care of them-
selves.    It tended to show that after the whistle had
been sounded for the station, and as they approached
the station of Peterton, Hughes and James O'Melia
were told that this was their station, and to get up
and get off, which they proceeded to do.    Alex. O'Melia
and the boy went out on the rear platform of the
coach ; and when they arrived at the station and the
train was running slowly, Alex. took the boy in his
arms and jumped upon the platform.    The conductor
was on the platform of the next car, and inquired if
all were off, when Alex. told him that they were not.
Nevertheless, the conductor gave a signal, and the
train commenced to run faster.    Alex. walked a few
steps along the platform and found his father lying
on his face and hands, and a little further along, and
beyond the platform, the body of Hughes was found in
a mangled condition.    The arrival of the train was
after midnight, when it was very dark, and the sta-

tion was not lighted, nor was there any one in charge of the same. It is true that the testimony offered in behalf of the railroad company is to the effect that the train came to a full stop at Peterton, and that it remained at the station between two and three minutes, giving ample time for passengers to leave it. Testimony was offered to show that Hughes had been sleeping and remained on the train until after it departed from Peterton, and that he jumped from the train after it had left the station and while it was in motion. An effort was also made to show that he was somewhat intoxicated at the time.

Some of the circumstances developed in the case strongly tended to sustain the theory of the plaintiff, but the conflict in the testimony has been settled by the jury, and we must assume that upon all disputed questions the facts are as the testimony of the plaintiff below would show. Accepting that offered in her behalf as true, the company was clearly guilty of culpable negligence. It is well settled that it

1. Carrier— passenger— time to alight— negligence. is negligence on the part of a railroad company for those in charge of a passenger train "to induce a passenger to leave the train while in motion, and a gross disregard of the duty it owes to him not to stop the train entirely, and give the passenger ample time and opportunity to alight." (*Filer v. Railroad Co.*, 49 N. Y. 51; *Bucher v. Railroad Co.*, 98 id. 128; Beach, Contr. Neg. § 160; 2 Am. & Eng. Encyc. of Law, 761.) It is not con-

2. Contributory negligence, how determined. tributory negligence *per se* for a passenger to leave a train which is in motion. Of course, a passenger must exercise ordinary care, and if he voluntarily places himself in a perilous position and incurs a danger so obvious that an ordinarily prudent man would not encounter

it, there can be no recovery. Whether the act of Hughes in leaving the train while it was in motion constitutes contributory negligence barring a recovery depends upon whether the danger was so patent that a prudent man under the circumstances would not have made the attempt. We think it was clearly a question of fact for the jury to determine. According to the testimony of the plaintiff, the train was running slowly, and at such a diminished rate of speed the motion of the train may have been hardly perceptible. From the testimony it would appear that James O'Melia was unable to determine whether the train was actually in motion when he attempted to alight. The fact that there was no light at the station made it the more difficult to decide as to the motion of the train, and the danger of leaving it. Then he would naturally think that the train would be brought to a stop, and the conductor would not invite him to leave the car when it was unsafe to do so. Of course, the mere fact that he acted upon the advice or command of the conductor would not justify him in attempting to alight from the train when it was obviously dangerous; and the fault of the conductor would not relieve the passenger from the consequences of his own reckless acts.

3. Question for jury.

"When, however, the passenger under the encouragement or instruction of the company's servants makes the leap and suffers an injury therefrom, such an act on the part of the passenger is not generally held contributory negligence; but when the passenger leaves the train voluntarily, even though at the suggestion of the conductor or other trainmen, while the train is in motion, it is a question for the jury whether he acted as a prudent man under the circumstances." (Beach, Contr. Neg., § 148.)

In the *Filer Case*, already cited, the following language is used :"

"That there was more hazard in leaving a car while in motion, although moving ever so slowly, than when it is at rest, is self-evident; but whether it is imprudent and careless to make the attempt depends upon the circumstances. And where a party by the wrongful act of another has been placed in circumstances calling for an election between leaving the cars or submitting to an inconvenience and a further wrong, it is a proper question for the jury whether it was a prudent and ordinarily careful act, or whether it was a rash and reckless exposure of the person to peril and hazard." ( See, also, *Railroad Co. v. Crunk*, 119 Ind. 542 ; *Nichols v. Railway Co.*, 68 Iowa, 732 ; *Carr v. Railway Co.*, 58 Am. & Eng. Rld. Cases, 239 ; *Odom v. Railroad Co.*, 14 S. Rep. 734 ; *Carruth v. Railroad Co.*, 14 id. 736 ; *Cousins v. Railroad Co.*, 56 N. W. Rep. 14 ; 2 Am. & Eng. Encyc. of Law, 762, and cases heretofore cited.)

If the conductor hustled Hughes and the other passengers from the cars at Peterton, in the darkness, as the witnesses for the plaintiff below have stated, he was certainly guilty of gross negligence, when it was his duty to exercise the highest degree of reasonable care in safely setting them down at the station, and, under the authorities which have been cited, it was clearly a question for the jury to determine whether Hughes was in the exercise of ordinary care when he obeyed the order of the conductor and attempted to alight from the train.

Some objections are made to the answers given by the jury to the special questions submitted, but we find nothing substantial in them. In response to one question the jury answered that the body of Hughes was found from 60 to 90 feet below the south end of the depot, while most of the testimony fixed the point

at about 120 feet from the depot. We do not deem the answer to be of much importance, but an examination of the testimony shows that the witnesses only estimated the distance, and did not undertake to give the exact measurement. We think there was testimony to sustain the findings that were made, and we can see no such inconsistency in the findings as will justify a reversal.

It is next insisted that the court erred in its instructions to the jury by requiring the application of the rule of comparative negligence, instructing in regard to gross negligence, and in other respects in the giving and refusing of instructions. The court in its charge stated the rules which govern where there is mutual or concurring negligence. It also recognized different degrees of negligence, and in doing so to some extent seemed to place the gross negligence of the company against the slight negligence of the deceased. Evidently the trial court had in mind some of the decisions of this court where it is held that a slight inattention to duty which is not the approximate cause of the injury does not bar a recovery for injury resulting from the negligence of another. Although some of the language employed was objectionable, it is clear that the court did not indorse the doctrine of comparative negligence, nor give the jury to understand that, if Hughes was guilty of ordinary negligence contributing to his death, there might be a recovery because the company was guilty of greater negligence. The passenger is required to exercise ordinary care, and his failure to exercise the highest or extraordinary care will not preclude a recovery for an injury caused by the gross or ordinary negligence of the railroad company. It is conceded that extraordinary care is not required of a

*4. Recovery, when not barred.*

plaintiff who brings an action of negligence, and that slight negligence on his part will not defeat a recovery. In the case of *Railway Co. v. Peavey,* 29 Kas. 180, cited by plaintiff in error, it is said that "it is settled in this state that a party may recover for injuries done to him or his property caused by the negligence of another, even if his negligence is slight." While this view was adopted and degrees of negligence were recognized, at the same time the court plainly instructed the jury and kept it before them throughout the charge that if Hughes failed to exercise ordinary care and prudence in jumping from or leaving the train, there could be no recovery for his death. Taking all the instructions together, we think the jury was not misled by the language of the court which is complained of, and that under the decisions it cannot be held that prejudicial error was committed in charging the jury as to the care required of the company and of the deceased. ( *Railway Co. v. Rollins,* 5 Kas. 167 ; *Sawyer v. Sauer,* 10 id. 466 ; *Railway Co. v. Pointer,* 14 id. 37 ; *Railway Co. v. Young,* 19 id. 488 ; *Railway Co. v. Richardson,* 25 id. 391 ; *Railway Co. v. Peavey,* 29 id. 170 ; *Railway Co. v. Henry,* 36 id. 565.) The testimony which was introduced warranted the court in stating the rule of gross negligence to the jury, and after an examination of the entire charge we are satisfied that the remaining objections to the rulings upon the instructions given and refused are not substantial, nor can error be predicated on them.

The final objection is that the damages allowed are excessive. According to the testimony, Hughes was 40 years of age, a man of good habits, with good health and a sound body. He was an industrious man, who had been engaged in mining, and who had earned wages as high as $5 per day ; and the jury

found that in his usual vocation he was capable of earning $42 per month, and his earnings were computed for a period of 25 years. It is said that no mortality tables were introduced to show the probable duration of the life of the deceased. Such tables are admissible in evidence, to assist the jury in estimating the expectation of life, but they are not indispensable.

5. Expectancy of life—estimate, how made.

The jury may make their estimate from the age, health, habits and the physical condition of the person at the time of his death. The court cannot interfere with the verdict of the jury upon the ground of excessive damages, unless they are so great as to appear to have been given under the influence of partiality or prejudice. Although the amount awarded was liberal, we cannot disturb the judgment on the ground of excessive damages.

The judgment of the district court will be affirmed.

All the Justices concurring.