The Atchison, Topeka & Santa Fe Railroad Company v. Ida C. Love, *as Administratrix of the Estate of Frank Love, deceased.*

No. 8504.

1. INJURY TO EMPLOYEE — *Low Bridge.* The evidence in this case examined, and found to be ample to support a finding by the jury that the plaintiff's intestate was killed by a low bridge negligently maintained by the defendant.

2. ———— *Gross Negligence — Question for Jury.* There being no proof tending to show contributory negligence on the part of the plaintiff's intestate, an instruction that slight negligence on his part would not bar a recovery in case the defendant was guilty

of gross negligence could not be prejudicial, even if erroneous; and *held*, further, that the facts in this case were such that it was for the jury to say whether or not the defendant was guilty of gross negligence.

*Error from Osage District Court.*
*Hon. William Thomson, Judge.*

AFFIRMED.                    OPINION FILED JUNE 6, 1896.

STATEMENT BY THE COURT.

FRANK LOVE had been employed for about 2½ years as a brakeman by the defendant company. On August 1, 1891, he was employed as rear brakeman on a freight-train making a night run from Argentine to Emporia. He had been running on this line of road but a short time, this being his fifth trip going west, or, as the jury find, his ninth time over the road as his regular run. It appears that on the 19th day of July preceding he had passed over the road when he was not at work, riding in the way-car. About 3½ miles west of North Ottawa the railroad crosses Appanoose creek on a Howe truss-bridge, the lateral timbers over the top of which are only 18 feet above the rails. After the train passed North Ottawa, Love went out on top of the freight-cars in the performance of his duties. It appears that an ordinary box car at the highest point is 12 feet above the rails. There were in the train several furniture-cars, which were very much larger than the ordinary car, being 13 feet and 6 inches above the rail at the lowest point of the top. When the train reached Quenemo, Love was found dead on top of a furniture-car which was the fourth from the way-car. He was lying on his back, with his head near the running-board, one leg curled under him, and the other hanging over the rear end of the car. There was a contusion on the right side of his head on or near the temple, and marks of blood

on the right side of his face.   On the east lateral of
the bridge a mark was found in the soot on the east
side, described by the witness as in the shape of a
half-moon and about four inches long, where the soot
and dirt had been brushed off.   Pieces of glass were
found on the east end of the bridge, and at some dis-
tance west of it a piece of a globe of a lantern with
the letters "U. P." blown in it was found.   The rim
of a lantern and Love's hat were also found about a
mile and a half west of the bridge.   Love was using
a "U. P." lantern.   The train stopped at Pomona,
and while the conductor noticed that the light of
Love's lantern could not be seen, he did not go to look
for him until the train reached Quenemo, which is
about 12 miles west of the bridge.   The jury rendered
a general verdict in favor of the plaintiff for $9,000,
on which judgment was entered.   The defendant
brings the case here for review.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plain-
tiff in error.

*Waters & Waters,* for defendant in error.

The opinion of the court was delivered by

ALLEN, J. : The principal contention in this court
is that there is no proof that Love was killed by the
low bridge over Appanoose creek ; that the plaintiff's
case rests wholly on unwarranted presumptions of
fact.   With this contention we do not agree.   All the
circumstances indicate that the right side of Love's
head struck the first lateral of the bridge at the place
where the soot was brushed off ; that the contusions
were caused thereby and produced his death.   No
other adequate cause for the wound on his head and
the mark on the bridge is shown.   The claim that the

mark on the bridge was caused by the same thing that made marks on the under side of many of the overhead pieces and tore out the west one is contrary to the evidence. George Ripper testified that he examined the marks ; that the marks extending across the bridge were alike., as if some machine had struck them, but that the one on the east side was different. The suggestion that Love might have met his death from other possible causes was one which might properly be urged before the jury, but reasonable men would not be very likely to indulge in fanciful speculations when a plain, adequate and reasonably certain cause of death was so clearly shown as in this case ; and we think the contention of counsel for plaintiff in error on the facts of the case is utterly without force.

Complaint is made of rulings on the admission of testimony, but we find nothing substantial in any of the objections urged, or worthy of comment. Complaint is made of the instruction of the court to the effect that slight negligence on the part of the plaintiff would not bar a recovery if the defendant was guilty of gross negligence. The instruction on this point is substantially the same given in the case of *A. T. & S. F. Rld. Co. v. Hughes*, 55 Kan. 491. But in this case there could be no possible error in giving the instruction for the reason that there was absolutely no proof of negligence on Love's part. He had never been informed in any manner that there was a low bridge across Appanoose creek. He had never passed over the road in the performance of his duties as brakeman, except in the night-time, and it is not shown that he ever had an opportunity to observe the height of this bridge. This particular night on which he met his death was dark and cloudy. The jury would not have been warranted in finding that he was

guilty of contributory negligence barring a recovery. On the other hand we are not prepared to say that the defendant was not guilty of very gross negligence in continuing to maintain for so many years a low bridge, over which it operated trains with furniture- and other cars so high that a brakeman could not stand upon them and pass through the bridge in safety. Such structures have been strongly condemned by this court in prior cases, and if railroad companies will persist in maintaining them to the imminent peril of the lives of their employees, who are engaged in a service whose necessary hazards are so great, it does not seem any hardship to require them to respond in damages to the families of those who are killed thereby.

The judgment is affirmed.

All the Justices concurring.