KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* MORRIS.

Opinion delivered November 19, 1906.

1. EVIDENCE—OPINION AS TO EXPECTANCY OF LIFE.—Testimony of an expert as to the expectancy of life of plaintiff's intestate at the time of his death was admissible.  (Page 533.)

2. SAME—HOW EXPECTANCY OF LIFE DETERMINED.—The probable duration of a person's life may be determined from his age, health, habits and other facts which affect its probable continuance and prospective condition at the time of his death.  (Page 533.)

3. SAME—PHOTOGRAPHS.—Photographs of the scene in which plaintiff's intestate lost his life, shown to be correct, were admissible to aid the court or jury to understand the evidence, and to aid witnesses to explain their testimony; but their exclusion was not prejudicial where the testimony of witnesses was sufficiently full and explicit to enable the jury to understand what they were intended to show.  (Page 534.)

4. SAME—RES GESTAE.—A statement by one who was mortally injured, made a few minutes after the injuries were received, tending to show the cause of the injuries, was admissible as a part of *res gestae.*  (Page 534.)

5. APPEAL—EXCEPTION IN MASS TO SEVERAL INSTRUCTIONS.—An exception in mass to several instructions given by the court will not be considered if any one of them be good.  (Page 535.)

6. SAME—EXCEPTION IN MASS TO REFUSAL OF SEVERAL INSTRUCTIONS.—An exception in mass to the court's refusal to give several instructions asked by appellant will not be considered on appeal if any one of them was bad.  (Page 535.)

7. RAILROAD—DUTY TO KEEP LOOKOUT IN YARD.—The act of April 8, 1891, requiring a lookout to be kept by persons running cars and engines, applies to the running of trains and engines in railroad yards, and to the case of employees upon the tracks as well as strangers.  (Page 535.)

Appeal from Benton Circuit Court; *John N. Tillman,* Judge; affirmed.

*S. W. Moore* and *Read & McDonough,* for appellant.

1. The court erred in permitting the plaintiff to prove the expectancy of life of the deceased by the physician.  Mortality tables are admissible, but personal knowledge and unauthenticated books are not.  63 Ark. 491; 81 Tex. 523; 20 Am. Eng. Enc. Law (2 Ed.), 884-5.

2. The admission of photographs is always allowed, when proved to be correct, for the purpose of enabling the witnesses to explain their testimony as to the facts, or to assist the jury

in arriving at a better understanding of the testimony of the witnesses. 100 Fed. 756; 1 Whart. Ev. § 676; 1 Whart. Crim. Ev. § 544; 16 Cal. 179; 11 Am. & Eng. Enc. Law (2 Ed.), 539. 22 Ib. 722-776; 105 Fed. 525; 71 Conn. 652; 16 N. Y. 509; 73 Ark. 183.

3. It was error to admit as evidence the statements made by deceased as to how the accident happened. They were not a part of the *res gestae* and were inadmissible. His statement was not the undesigned incident of the act that caused the injury. 50 Ark. 397; 51 Ark. 509; 58 Ark. 168; 61 Ark. 52.

4. It was error to instruct the jury that the deceased had a right to cross and recross appellant's sidetrack if in his judgment it was necessary to do so in order to procure the shingle. It was not a side track, but a yard the deceased had to cross, There was no proof that it was necessary in the judgment of deceased to go there. Under the instruction, ordinary care on the part of deceased was limited to looking and listening. There was no duty on appellant to keep a lookout for persons on this side track. 145 U. S. 418; 3 Elliott, Railroads, § 1258.

*E. P. Watson,* for appellee.

1. Mortality tables are not the only evidence that is competent to prove the expectancy of life. 20 Am. & Eng. Enc. Law (2 Ed.), 887. The physician qualified himself as an expert and testified as such.

2. To permit the introduction of photographs is largely within the discretion of the trial court. A photograph when' offered must be one of the location and situation at the very time of the accident. 7 Am. & Eng. Ry. Cas. (U. S.), 510; 152 Mo. 217; 75 Am. St. Rep. 462; 6 Am. & Eng. Ry. Cas. 168. A photograph is at best but secondary evidence, and the exercise of discretion by the court as to its admission is conclusive. 22 Am. & Eng. Enc. Law (2 Ed.), 776.

3. The statement of the deceased was clearly a part of *res gestae,* and was admissible. 78 Ark. 213; 58 Ark. 179; 51 Ark. 509; 21 Am. & Eng. Enc. Law (1 Ed.), 101-8; 48 Ark. 333; 43 Ark. 104.

4. Unless in the motion for new trial the errors in the instructions complained of are pointed out specifically, the objec-

tions will not be considered here.    79 Ark. 53; 74 Ark. 256; *Ib.* 298; 75 Ark. 577.

BATTLE, J.    This was an action brought by R. S. Morris, as administrator of Jacob Webster, deceased, against the Kansas City Southern Railway Company to recover damages on account of the death of his intestate.    He alleged in his complaint" that the defendant maintained, on the second day of May, 1904, on its line of railroad, at the city of Siloam Springs, in Benton County, in this State, a passenger and freight depot and a large switch yard and many side tracks of railroad, and had a foreman and laborers employed to work on said yard and side tracks.    Mike Kelley was the foreman, and Jacob Webster was one of the laborers working under his orders and supervision.    That while so employed it was the duty of Webster to go over and across the said tracks and switches.    That on the morning of May 2, 1904, there was standing on the switch in said yards farthest west from the depot building two large furniture cars.    That, while the engineer and conductor were switching on the track next to the depot building, Kelley directed Webster to get a small piece of timber to be used in raising the frog of the railroad track in the switch yards.    That upon the west of the tracks, upon which the two cars were standing, was a lumber yard.    That Webster passed behind the two cars on the south side to get a piece of lumber from the lumber yard which was near to the track on which the two cars were then standing.    That at the time he passed in the rear of said cars, or to the south of them, the locomotive and train that was then being formed was on the track next to the depot and to the east of the track upon which the two cars were standing.    And from where the two cars were standing, after Webster had gone to the west of them in the performance of his duties at the time as a section hand, he could not see the engine and train of cars on the track next to the depot and east of where he stood.    That, after obtaining the piece of timber he was sent to get, he started to recross the track on which the two furniture cars were standing and to go to the place he was directed to take the timber to be used. That, in order to return to the place, he had to recross the track upon which the two cars were standing.    That he had been on the west of the track after he crossed it to the lumber yard

not exceeding two minutes. And when he crossed to the west side the two cars were standing, still disconnected as aforesaid. That in attempting to cross the track on which the two cars stood he crossed on the tracks south of the last car. That when he crossed to the west the locomotive and train that were then being made up headed north and were on the track next to the platform and depot, and to the west of the depot. That when Webster started to cross the track back to the direction from whence he came, he started to cross about twenty feet from the end of the south car on the track. That when about half way across the track the car next to him was driven with force and rapidity by the locomotive under the control of the engineer striking the same so as to drive the car against and over Webster, and to knock him down and mortally injure him, from which injuries then received he died in about three hours.

"The plaintiff states that at the time his intestate was struck and killed by the defendant's act he was in the discharge of his duty as a servant of the defendant.

"The plaintiff states that at the time the defendant's locomotive, operated by its engineer and under the direction of said engineer and the conductor in making up said train of cars, and which engine and train of cars was backed over the body of the deceased, was run and operated in the most careless and negligent manner. That without warning or signal given by the engineer he backed the engine under his control in such unskillful manner and with such rapidity in the switch yards as to force the two cars aforesaid together and drive them over one hundred feet from where they then stood. That, had the engineer and conductor done their duty as the servants of the defendant company, the cars would not have been driven over Webster; but, on account of their negligence and disregard of his rights as a servant of the company acting at the time under the orders of and direction of the company's section foreman in the yards of the company, he, Webster, lost his life without any act of carelessness or negligence on his part.

"The plaintiff states that the said Jacob R. Webster at the time of the striking and death as hereinbefore stated was a married man. That he left him surviving a wife, Mary R. Webster, who is of the age of 50 years. That he left him surviving the

following named children: Oscar F. Webster, aged 19 years, Ida S. Webster, aged 17 years, Homer F. Webster aged 13 years, Earl H. Webster aged 10 years and Inatia Webster aged —— years. That at the time of his death Jacob R. Webster was 51 years of age. That at the time of his death he left an estate of about the value of $150. That he and his family were dependent upon his daily labor for a support. That without his support his family as hereinbefore named could not be fed, clothed and educated, and that his labor was their sole means of support."

He asked for judgment for $1,920 damages and all other proper relief.

The defendant specifically denied each allegation in the complaint, and pleaded contributory negligence of the deceased.

In a trial before a jury the plaintiff recovered a verdict for $1,500, and the defendant appealed.

H. H. Canfield, a physician, after testifying that Webster was struck by the cars of the defendant, and that the last time he saw him he was in a dying condition, testified that he was about fifty years old; that he (witness) was familiar with the tables of mortality, having been an examining physician for insurance companies for ten years; and that Webster's expectancy of life was between 19 and 20 years. The defendant moved to exclude this testimony because it was incompetent and not responsive to any allegation in the complaint, and the court overruled the motion.

Defendant offered to exhibit photographs of the scene of the accident in which Webster lost his life, as evidence, and the court refused to allow them to be so used; and it saved exceptions.

J. E. Tincher testified that he was the first man to go to the relief of Webster after he was hurt; that Webster was lying with his limbs below his knees across the rail of the railroad track and his body was lying outside; that he pulled him off the track. While in this position, while lying near the track, F. Daniels went to his assistance. He (Daniels) testified that, four or five minutes after he (Webster) was hurt, he asked him, "Dad, what's the matter with you? How did this happen?" and that Webster replied, "I went to go across the track," and he said, "not knowing they were on this track, they crushed me down,

and I could not get up or get out." Defendant moved the court to exclude what the deceased said, which the court refused to do. James Snyder testified that he, Webster, "said a few words about his boys; told 'them to be good boys." He died in about two hours after he was hurt.

The court gave six instructions to the jury, on its own motion. They were numbered 1, 2, 3, 4, 5, 6. The defendant objected as follows: "To the giving of instruction numbered 1, 2, 3, 4, and 5 by the court on its own motion the defendant at the time objected, but the court overruled its objections, and the defendant at the time excepted."

The defendant asked the court to give to the jury six instructions, numbered 1, 2, 3, 4, 5, and 6. It is said in the bill of exceptions: "The court refused to give instructions numbered 1, 2, 3, 4 and 5 so requested by defendant, and to such refusal the defendant at the time excepted."

The testimony of Dr. Canfield, objected to by the defendant, was competent. *San Antonio & Aransas Pass Railway Company* v. *Bennett,* 76 Texas, 151, 153. Life tables are competent evidence, but not essential to the recovery of damages on account of the wrongful death of a person in cases like this. The jury may determine the probable duration of his life from his age, health, habits, and other facts which affect its probable continuance and prospective condition at the time of his death. *Beems* v. *Chicago, Rock Island & Pacific Railway Co.,* 67 Iowa, 435, 443; *Atchison, Topeka & Santa Fe Railroad Co.* v. *Hughes,* 55 Kan. 491, 502, 503; *Boswell* v. *Barnhart,* 96 Ga. 521, 524.

In *Beems* v. *Chicago, Rock Island & Pacific Ry. Co.,* 67 Iowa, 435, 443, our views upon this subject are expressed. In that case the court said: "Next, it is urged that there was no evidence of the probable life of the deceased. No life tables were introduced in evidence, and it is claimed that without such evidence there was no proper basis for the computation of damages. The damages in cases like this never can be accurately estimated. It is the common practice to introduce life tables that the jury may be advised of the probable duration of the life of a person of the age of the deceased. But, after all, the amount of damages is largely a matter of conjecture. No estimate can be made of the probable illness, sickness and inability to secure employment, nor

can it be ascertained therefrom at what period in the prospective life the infirmities of age will reduce the capacity for labor. We do not think that the introduction of life tables in evidence is essential to the recovery of damages. It is not claimed that the damages awarded to the plaintiff are excessive. The evidence shows that the deceased was twenty-five years of age, and that he was an active, industrious man, in good health, with a common education, and that at the time of his death he was earning from forty to forty-five dollars per month. These facts were sufficient to authorize an award of substantial damages; and, in the absence of the claim that an excessive amount was fixed by the jury, the verdict should be allowed to stand." See to the same effect *Atchison, Topeka & Santa Fe Railroad Co.* v. *Hughes,* 55 Kan. 491, 502, 503; *Boswell* v. *Barnhart,* 96 Ga. 521, 524.

The photographs should have been admitted as evidence. Photographs proved to be correct, like diagrams, are admissible as evidence to aid the court or jury to understand the evidence, and witnesses to explain their testimony. (*Baustian* v. *Young,* 152 Mo. 317, 319, s. c. 75 Am. St. Rep. 462, and note on pages 468-479.) But the exclusion of them in this case was not prejudicial, because the testimony of witnesses was sufficiently full and explicit to enable the jury to understand what they were intended to show. *Blair* v. *State,* 69 Ark. 558.

Was the statement made by the deceased to Daniels admissible? It was made within a few feet of where he had been mortally injured, and four or five minutes after the accident occurred, and while the excitement caused by the injury was unabated and in all probability controlled and dominated his mind. The injury was overwhelming and appalling, and sufficient at the time to drive from his mind all hope of surviving many hours—to bring him in the presence of immediate dissolution—and to drive from his mind any intention or desire to manufacture evidence for his benefit, and to force him to speak the truth, and to make his statement an emanation of the accident, "so connected with the cause of his injuries as to preclude any idea that it was the product of calculated policy." The statement was admissible. *Carr* v. *State,* 43 Ark. 104; *L. R., M. R. & T. Ry. Co.* v. *Leverett,* 48 Ark. 333; *Little Rock Traction & Electric Co.* v. *Nelson,* 66

Ark. 494; 1 Wharton on Evidence (3 Ed.), § § 259, 262; 3 Wigmore on Evidence, § § 1745, 1757.

The exception of defendant to the instructions of the court. was *en masse,* and, one or more of them being good, can not be entertained by this court. *Atkins* v. *Swope,* 38 Ark. 528; *Wells* v. *Parker,* 76 Ark. 41; *Walnut Ridge Merc. Co.* v. *Cohn,* 79 Ark. 338. The exception to the refusal of the court to give instructions asked for by the defendant was likewise *en masse,* and, one or more of them being bad, will not be considered here. *Young* v. *Stevenson,* 75 Ark. 181.

The defendant argues that there was no duty on its part to keep a constant lookout for persons and property on the side tracks in its railroad yards; that the act of the General Assembly, entitled "An act to better protect persons and property upon railroads in this State," approved April 8, 1891, does not require a lookout to be kept by persons running cars and engines in a railroad yard. But this is not correct. In *Little Rock & Hot Springs Western R. Co.* v. *McQueeney,* 78 Ark. 22, it was held that the act required such lookout to be kept in railroad yards; that it makes no exceptions, and applies to all cases which come within the mischief intended to be remedied and within its object. In the case cited the person injured was not an employee of the railroad company. But we see no reason why the employee should be excepted. The act makes no exceptions as to persons and property upon the track of a railroad. The employee needs protection, and should receive the benefit of the act.

Appellant presents other questions in its brief. We have considered them, but do not deem it necessary to discuss them in this opinion.

The evidence was sufficient to sustain the. verdict in this court; and there is no complaint in the motion for a new trial that the damages awarded to the plaintiff were excessive.

Judgment affirmed.