St. Louis, Iron Mountain & Southern Railway Company

*v.* Davis.

Opinion delivered January 10, 1910.

1. Master and Servant—Contributory Negligence.—The act of March 8, 1907, making railroad companies and all corporations liable for the negligence of fellow servants, did not abolish the defense of contributory negligence. (Page 489.)

2. Same—Duty to Keep Lookout.—Where plaintiff's intestate failed to keep a lookout when it was his duty to do so, and thereby failed to discover a signal of danger, and was killed, plaintiff was not entitled to recover. (Page 489.)

Appeal from Cross Circuit Court; *Frank Smith,* Judge; reversed.

### STATEMENT BY THE COURT.

W. H. Davis was a brakeman in the employ of appellant. On the 22d day of August, 1908, he had charge of the "switching list" at Marianna, and in consequence thereof it was his duty to direct how the switching was to be done. It was the duty of the other members of the crew, the engineer, fireman and brakeman, to follow the directions of Davis in making whatever switching was necessary in the yards at Marianna after the train arrived there that day. The train came into Marianna from the south, and was cut in two in the edge of town. The engine with three or four cars was moved northward toward the depot. The crew accompanying it consisted of the engineer, the fireman, another brakeman named Holland, and Davis. To make the statement intelligible, we will use the plat that was in evidence.

"B M C" is a switch connecting the main track and the passing or house track, "A D C." When the engine and cars, proceeding northward on the main track, arrived at the point "B," the brakeman Holland opened the switch at that point, and it remained open until the accident and death of Davis occurred.

Taking the most favorable view of the evidence for appellee, the jury might have found that, after the switch was opened by Holland at "B," the engine and cars with the balance of the crew, including Davis, continued on the main track passing out at the switch "A" and back down to the depot, there "spotting," or leaving to be unloaded, two cars that were attached to the engine and tender. In spotting these two cars other cars that were on the passing track in front of the depot were pushed down south on the passing track toward "C." After the two cars were spotted, Davis cut the engine and tender loose, and got on the rear end of the tender. The engine then went north on the passing track beyond switch "A." Davis signaled the engineer to come back down the main line. He dropped off and opened the switch for the main line at switch point "A." When the engine and tender backing south passed switch "A," Davis closed the switch "A," then got back on the southeast corner of the tender. He sat down and crossed his legs with his arm in the handle on the tank. He signaled the engineer to back down the main track, which the engineer did at a speed of about fifteen or twenty miles an hour. The engine and tender ran into the open switch at "B," and collided with the cars that were standing on the house track near "C," producing the injury that resulted in the death of Davis. From the point "A" down the main track "A E B" to "B" is 961 feet, and 600 feet of that distance the track was perfectly straight, and there was nothing at the time of the occurrence to obscure the vision for that distance between Davis on the tender and the open switch at "B." There was at switch "B" the ordinary switch stands with the usual targets to show whether the switch was open or closed. The target showing that the switch "B" was open was a dull red color. It was turned that day at the time so as to indicate that the switch was open. On a clear day, such as that was, the target indicating the open switch could have been seen from 150 to 200 feet away. The target indicating "safety," or when the switch was closed, was colored green. Davis was facing in the direction the tender was moving.

On behalf of appellant the engineer who was on the engine

at the time of the accident testified in part as follows: "Mr. Davis was working that day as the 'swing man,' and at the time as the 'list man.' In the capacity of a list man a part of his work was to direct the movements of the engine. It was his place to direct us what movements to make. I looked to him for signals and directions for moving the engine. It was my duty to watch his signals and obey them. He was the one that signaled me to back down the main line. I know where the switch stand was there at that time. I did not know that the switch was open. I was depending upon Davis to keep the lookout down the track. The only ones on the engine were the fireman, Mr. Davis and myself, and Mr. Davis was in the best position to keep the lookout. Mr. Davis was the only man on the engine at that time that had an unobstructed view of the track on both sides, and we were depending upon him to keep the lookout. My view of the switch was obstructed by the body of the tank. The switch stand was on the side of the fireman. Mr. Davis was standing at the southeast corner of the tank right at the rear end. From the time that we got on the main line on down to the switch stand there was nothing to prevent Mr. Davis from seeing that the switch itself was open, and that the danger sign was exposed. I am well enough acquainted with the track to know there was nothing to obstruct his view. I was risking my life and depending wholly upon him to keep the lookout. While we were backing down the main track, Mr. Davis was standing on the rear stirrup of the tank on my side, holding with his right hand and signaling me with his left, with his face facing the track. He gave me a hurry-up signal, which I ignored, and got my injector and put that on, and just after I put that on I felt the tank jump, and it flashed through my mind that he had failed to throw the switch, and I rushed around and pulled out the injector. He kind of raised his left hand, and I halloed to him to jump. He kind of drew up, and I threw the reverse lever, and it got this knee between it and the side of the cab and bound me there. I had hold of the reverse lever and valve until the engine stopped. I stood there until the side of the car came in to the window and bound me there. Instead of jumping, Davis held on to the handrail. I can't describe it, but the expression of his face looked to me like he realized what had been done by his negligence."

The fireman testified in part as follows: "As we were backing down, I saw that the switch was open. I saw the red color

exposed. I did not call the engineer's attention to it because I knew the brakeman was there, and I supposed they were intending to go into the cut-off. I did not know the cars were standing there on the passing track. I was on the west side of the engine. I did not know that the cars extended down so as to block the cut-off. As we were coming down the track, I could see that the switch was open, but I thought Mr. Davis knew what he was doing, and that there was nothing on the track, and that they were going in there. I knew that it was the custom of the engineer to act on the brakeman's signals. My safety was depending upon Mr. Davis's directions, and I was relying wholly upon him as to that. 'I supposed that he knew what he was doing, and that the track was clear."

The appellee sued appellant, alleging that the death of Davis was caused by the negligence of appellant in backing its engine at a rapid speed, and by leaving the switch open.

The answer denied all the material allegations of the complaint, and set up the defense of contributory negligence.

Among other prayers by appellant was the following:

"1. You are instructed, under the law and the evidence in this case, to return a verdict for the defendant." The prayer was refused, and exceptions duly saved.

The verdict and judgment were for $8,000, and this appeal has been duly prosecuted.

*E. B. Kinsworthy* and *Lewis Rhoton,* for appellant.

The court should have directed a verdict for defendant. 41 Ark. 542; 17 L. R. A. (N. S.) 542; 35 L. R. A. 833; 98 Cal. 19; 147 Mich. 667; 37 N. Y. Supp. 157; 23 Col. 226; 20 Ore. 285. The deceased assumed the risk of dangers which by the use of ordinary care he could have discovered. 67 Ark. 209; 137 Ind. 206: 134 Ind. 431; 149 Fed. 104. The presumption that the employer has performed his duty to his employee does not justify the employee in heedlessly going into danger. 79 Me. 397; 89 S. W. 1112; 14 L. R. A. 552. One entering the service of a railway company assumes the risks that are plainly open to observation. 53 Mich. 125; 152 Ind. 399; 122 U. S. 189.

*N. W. Norton, Smith & Smith* and *H. F. Roleson,* for appellee.

The negligence of the master is not one of assumed risks. 67 Ark. 217. Acts 1907, p. 162, controls this case and is consti-

tutional. 87 Ark. 587. Contributory negligence is an affirmative defense, and must be .proved. The presumption is that the party injured was in the exercise of ordinary care until the contrary is shown. 48 Ark. 460; 46 Ark. 437; *Id.* 182; 81 Ark. 275; 79 Ark. 76. The children of deceased are entitled to compensation for the loss of training and care of their father. 81 Ark. 275; 61 Ark. 258; 67 Ark. 306; 60 Ark. 550.

WOOD, J. (after stating the facts). There was evidence to sustain a finding that appellant was negligent in causing the engine and tender to be backed at an unusual speed, and also in leaving open the switch. While this was the negligence of the fellow servants of Davis, yet, under the act of March 8, 1907, this was negligence for which appellant was liable. *Aluminum Company of North America* v. *Ramsey,* 89 Ark. 522. But the undisputed evidence shows that the negligence of Davis concurred with the negligence of his fellow servant in producing the injury which resulted in his death, and such contributory negligence on his part is a complete defense to the suit.

It was the duty of Davis under the uncontroverted evidence to keep the lookout for his own safety and that of his co-employees. "The lookout must be kept in the yards of the company as well as on other parts of the track, and is for the benefit of employees of the company as well as others." *St. Louis S. W. Ry. Co.* v. *Graham,* 83 Ark. 61, 68; *Kansas City So. Ry. Co.* v. *Morris,* 80 Ark. 528; *Little Rock & H. S. W. Ry. Co.* v. *McQueeney,* 78 Ark. 22. If Davis had been keeping such lookout, he could have seen the target that warned him of the open switch. This signal of danger was on, and, according to all the evidence on the subject, could have been seen by Davis, had he been keeping the lookout. If he did not discover the peril in time, it was through his own negligence.

There is nothing in the evidence to warrant the conclusion that the employees on the engine, discovered the peril of Davis in time, by the exercise of ordinary care, to have averted the collision. The testimony of the engineer shows that he did everything in his power to avoid the injury after the peril of Davis was discovered.

Contributory negligence was established as matter of law, and the court erred therefore in refusing appellant's prayer No. 1.

For this error the judgment must be reversed, and the cause remanded for new trial. It is so ordered.