Public Utilities Corporation of Arkansas *v.*
Cordell.

Opinion delivered December 7, 1931.

*Mahony & Yocum,* for appellant.

*McNalley & Sellers,* for appellee.

HART, C. J., (after stating the facts). It is earnestly insisted that the court erred in admitting as a part of *res gestae* the testimony of Mrs. Arthur Lang to the effect that she got to the home of Albert Lang and asked him how the accident occurred, and he replied that he struck a match to light a cigarette in the bathroom and this caused the explosion. The record shows that Albert Lang was very severely burned. One witness testified that his hair and eyelids, his face, his arms, and his hands were burned. He was in severe pain and died as a result of his injuries. The skin was blown off of his hands, and he was mangled and' burned all over. Under these circumstances, we think the testimony of the witness was admissible as part of *res gestae.*

No hard and fast rule on the subject can be laid down, and each case, in the very nature of things, must depend upon the accompanying facts. Various elements for consideration must be looked into. The declaration need not be strictly coincident with the act which caused the injury, but it must stand in immediate casual relation to that act and be a part of it. The declaration must be so near in point of time as to grow out of and explain the character and quality of the main fact, and must be so closely connected with it as to practically constitute but one entire transaction. The evidence offered as part of *res gestae* must not have the earmarks of a device, or an afterthought, or be merely a narrative of a past transaction. *Clinton* v. *Estes,* 20 Ark. 225; *Carr* v. *State,* 43 Ark. 104; *Little Rock, Mississippi River & Texas Ry. Co.* v. *Leverett,* 48 Ark. 333, 13 S. W. 50, 3 Am. St. Rep.

230; *Little Rock Traction & Electric Co.* v. *Nelson,* 66 Ark. 494, 52 S. W. 7; *Itzkowitz* v. *P. H. Ruebel & Co.,* 158 Ark. 454, 250 S. W. 535, and *Kansas City So. Ry. Co.* v. *Morris,* 80 Ark. 528, 98 S. W. 363.

Many other cases on the subject from this court might be cited, but the rule is so well settled that the only difficulty is in the correctness of its application to a given state of facts. A good statement of the rule may be found in the case of *Kansas City Sou. Ry. Co.* v. *Morris,* 80 Ark. 528, 98 S. W. 363, 10 Ann. Cas. 618, in the following language:

"Was the statement made by the deceased to Daniels admissible? It was made within a few feet of where he had been mortally injured, and four or five minutes after the accident occurred, and while the excitement caused by the injury was unabated and in all probability controlled and dominated his mind. The injury was overwhelming and appalling, and sufficient at the time to drive from his mind all hope of surviving many hours —to bring him in the presence of immediate dissolution —and to drive from his mind any intention or desire to manufacture evidence for his benefit, and to force him to speak the truth, and to make his statement an emanation of the accident, 'so connected with the cause of his injuries as to preclude any idea that it was the product of calculated policy'."

As we have just seen, Albert Lang was badly burned, and shortly afterwards died as a result of his injuries. His first conscious act after the unfortunate accident was his remark to his sister-in-law, within five minutes after the explosion occurred. When we consider the severity of his burns and the condition under which he answered the question, it is practically certain that there was no time or thought of manufacturing evidence, nor was there any element of a device or afterthought. His sister-in-law ran to the scene of the accident when she heard the explosion and immediately called an ambulance. In an excited manner, she asked him how the accident occurred, and it is reasonably certain that his answer

was made with the excited feeling which had lasted from the moment of the accident until the question was asked him. Therefore, we do not consider this assignment of error to be well taken.

It is next urged that the court erred in admitting the testimony of the witness, Escoubas, to the effect that there was a reduction of the gas pressure on the morning of the accident at his place of business because his place of business was situated in the fire zone or low-pressure district, and the house was situated in the residential district, which had a different degree of pressure. According to the evidence of the manager of the defendant company, who was a witness for the plaintiff, there might have been some relation between the pressure in the two districts because both came from the intermediate lines. At any rate, the testimony was competent for what the jury might think it to be worth as tending to show that there was a reduced pressure of the gas throughout the city on the morning of the accident.

It is also earnestly insisted by counsel for the defendant that the evidence is not legally sufficient to support the verdict; but, while this may be regarded as a close question of fact, we think the evidence for the plaintiff, when considered in its most favorable light, was sufficient to show negligence on the part of the defendant. In the first place, it can make no difference in the defendant's liability for negligence that it purchased the gas from another company. The reason is that it must answer for its own negligence in the distribution of the gas to the same extent as though it had produced the gas from its own fields. *Martin* v. *Camden Gas Co.*, 179 Ark. 481, 17 S. W. (2d) 309. In the same case, following our earlier decisions on the question, it was held that a gas company must use a degree of care commensurate with the danger which it is its duty to avoid, and, if it fails to exercise such degree of care and injuries result from such negligence, it is liable. To the same effect see *Little Rock Gas & Fuel Co.* v. *Coppedge*, 116 Ark. 334, 172 S. W. 885.

According to the evidence adduced by the plaintiff, the jury might have found a state of facts as follows:

The morning of the 20th of December, 1929, was the coldest in the year and caused a reduction in the pressure of gas throughout the city of El Dorado because more gas was required to meet the demands of the consumer. Mrs. Lang as usual got up on the morning in question and lit the fire in the bathroom and turned it down so that the room would be ready for her son and a roomer, who both worked at night and were accustomed to get up along about noon. She went along about her business and heard nothing further until the explosion. It seems from the statement of Albert Lang that he went to the bathroom and struck a match to light a cigarette and this caused the explosion. The jury might have inferred that, because of the low pressure of the gas, about which the occupants of the house were not notified, the fire in the bathroom went out; and, when the gas pressure was increased without notifying the occupants, it escaped into the room and filled it so that when the lighted match came in contact with the gas, the explosion occurred. It is suggested that the remaining stoves in the house continued to burn, but this was explained by one of the witnesses for the plaintiff, who said that they would continue to do so because the flame had not been turned down in them. It is true that, according to the evidence for the defendant, the escaping gas was caused by a loose or defective connection in the stove, for which the plaintiff was responsible. But it is fairly inferable from the evidence for the plaintiff that the flame went out in the bathroom because of the reduced pressure of the gas, and that it was afterwards turned on by the gas company without notifying the occupants of the house so that, when Albert Lang went into the bathroom and lit a match the explosion naturally resulted.

Therefore the judgment will be affirmed.