George SMITH *v.* STATE of Arkansas

CR 75-167                                    536 S.W. 2d 289

Opinion delivered May 3, 1976
[Rehearing denied June 7, 1976.]

*Harold L. Hall,* Public Defender, by: *Robert Lowery,* Dep. Public Defender, for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

ELSIJANE T. ROY, Justice. On July 8, 1974, David Powell, a desk clerk employed by the Rose Motel, was shot in the abdomen while on duty. Two persons outside the motel, hearing the gunshot, observed two black males running out of the motel lobby and saw one throw a sawed-off shotgun in the hedges on the side of the motel. One of the witnesses noted the license number of the vehicle which pulled away. The police were notified, and appellant and two other persons found at the address indicated by the license registration form were arrested. After his arrest appellant signed a rights form and confession which stated that though he was in the motel office at the time of the shooting a companion was responsible for the shooting. Appellant was found guilty by a jury and sentenced to life imprisonment in the state penitentiary. This appeal follows the conviction.

Appellant first contends that the court should dismiss the information because Act 438 of 1973 is unconstitutional. We previously have considered and found this argument without merit since we had occasion to consider similar allegations of constitutional defect regarding Act 438 in *Collins v. State,* 259 Ark. 8, 531 S.W. 2d 13 (1975), and *Neal v. State,* 259 Ark. 27, 531 S.W. 2d 17 (1975).

Appellant next argues error in admitting as res gestae hearsay testimony concerning the victim's statements after the offense was committed. Two witnesses entering the motel

immediately after hearing the gunshot testified that as they walked in Powell exclaimed, "They didn't get the money!" Approximately five minutes thereafter Officer Thomas Bernard arrived to investigate the incident. He questioned the witnesses, then entered the motel and asked the severely injured night attendant, "What happened?" Powell stated two black males had tried to rob him.[1]

The res gestae doctrine suspends the normal caution attending hearsay statements based on the reliability of observation generated by emotion not the product of reflection and reason. When such an exception is sought to be introduced relevant factors to be considered are the time interval which has elapsed between the event and the comment, the gravity of the exciting event and the continuing potential for the event to exert influence over the declarant. In support of his position appellant cites *Liberty Cash Grocers, Inc.* v. *Clements,* 193 Ark. 808, 102 S.W. 2d 836 (1937), and *Nelson* v. *State,* 257 Ark. 1, 513 S.W. 2d 496 (1974). Both are distinguishable from the case at bar.

In *Liberty* the statement sought to be introduced under the res gestae exception was the comment of an uninjured motorist, and the court found that the declarant was narrating the act, rather than reacting to the act itself. In *Nelson* the comment sought to be introduced under this exception was that of a witness to a shooting rather than that of a victim of a shooting. A bystanding witness, as in *Nelson,* involved only peripherally with the violence done, is far different from the witness-victim in this appeal, whose testimony was under more immediate compulsion since he was still speaking while under the influence of the occurrence.

We are of the opinion the doctrine enunciated in the following Arkansas cases clearly supports the admissibility of the questioned statements here.

In *Kansas City Southern Railway Co.* v. *Morris,* 80 Ark. 528, 98 S.W. 363 (1906), the decedent had died as a result of being struck by a train. Before his death *he responded to a question* ask-

---

[1]The record is not clear as to the exact time lapse between the shot and this statement, but the officer testified it would have been about 13 minutes.

ed by someone rushing up to aid him after his accident. This court held his statement admissible as an excited utterance, and said:

> * * * It (the statement) was made within a few feet of where he had been mortally injured, and four or five minutes after the accident occurred, and while the excitement caused by the injury was unabated and in all probability controlled and dominated his mind. *The injury was overwhelming and appalling, and sufficient at the time to drive from his mind all hope of surviving many hours — to bring him in the presence of immediate dissolution — and to drive from his mind any intention or desire to manufacture evidence for his benefit, and to force him to speak the truth, and to make his statement an emanation of the accident, "so connected with the cause of his injuries as to preclude any idea that it was the product of calculated policy." The statement was admissible.* (citations omitted) (emphasis supplied)

In *Ft. Smith Oil Co.* v. *Slover*, 58 Ark. 163, 24 S.W. 2d 106 (1893), the statement, being made about thirty minutes after the occurrence and the victim having been moved from the scene, was held inadmissible, but quoting Wharton on Evidence the court said:

> The *res gestae* may be defined as those circumstances, which are the undesigned incidents of particular litigated acts, and are admissible when illustrative of such acts. *These incidents may be separated from the act by lapse of time more or less appreciable.* (emphasis supplied) Their sole distinguishing feature is that they should be necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for, or emanations from, such act, *and are not produced by the calculated policy of the actors. In other words, they must stand in immediate causal relation to the act, a relation not broken by individual wariness seeking to manufacture evidence for itself.* (emphasis supplied) * * *

In the case of *Public Utilities Corp. of Ark.* v. *Cordell*, 184 Ark. 878, 43 S.W. 2d 746 (1931), the court held where one fatally burned in an explosion was asked in the ambulance on

the way to the hospital what happened his response was admissible as part of the res gestae. In reaching its decision on this issue the court declared:

> * * * When we consider the severity of his burns *and the condition under which he answered the question,* it is practically certain that there *was no time or thought of manufacturing evidence,* nor was there any element of a device or afterthought. * * * (emphasis supplied)

And, speaking of the question asked, the court said:

> * * * In an *excited manner, she asked him how the accident occurred, and it is reasonably certain that his answer was made with the excited feeling which had lasted from the moment of the accident until the question was asked him.* * * * (emphasis supplied)

Dr. Kent Westbrook testified that Powell's wound was about ten inches in diameter, that the spleen was destroyed and the large intestine was shot in half and about one-third of the liver had to be removed. The details of the injury leave little doubt that the decedent ten minutes or so after suffering the wound would be incapable of considered deliberation in recounting preceding events. Officer Bernard testified that Powell was "laying in behind the counter on the floor with his intestines exposed, bulging out, and him trying to hold them in", indicating that the victim's comments were still under the influence of the traumatic episode at the time he answered Officer Bernard's question. Having found the statement to Officer Bernard admissible under the res gestae doctrine, indubitably the remark made to the two witnesses immediately after the gunshot wound is admissible.

Appellant also contends the court erred in giving the State's instructions on felony murder alone and in refusing to give appellant's instructions on malice and lesser included offenses. The court properly refused to instruct on the lesser degrees of homicide. See *Murray v. State,* 249 Ark. 887, 462 S.W. 2d 438 (1971), and *Johnson v. State,* 252 Ark. 1113, 482 S.W. 2d 600 (1972). The evidence here clearly supports the felony murder charge under which appellant was convicted. In *Clark v. State,* 169 Ark. 717, 276 S.W. 849 (1925), we said:

This court has repeatedly held that where the indictment charges murder in the first degree and the undisputed evidence shows that the accused, if guilty at all, is guilty of murder in the first degree, then it is not error for the court to refuse to give instructions authorizing the jury to return a verdict of guilty of one of the lower degrees of homicide. * * *

Appellant also raised other objections during the trial that he did not argue on this appeal; however, having considered every objection and assignment of error as we are required to do by Ark. Stat. Ann. § 43-2725 (Supp. 1975), we find no error requiring reversal.

Affirmed.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. Like most criminal cases it is difficult to find a good hat for the appellant. If I should accept the evidence most favorable to the jury's verdict, it is sufficient to sustain a death sentence. If I should accept the evidence in the light most favorable to the testimony given in court by appellant, his conduct is still subject to criticism. However, since this nation's constitution has been founded on the principle that it is a nation of laws and not of men, I believe that we are depriving appellant of a fair trial by declaring the statements made by the victim in response to the policeman's interrogations to be part of the *res gestae*.

The term *res gestae*, as an exception to the hearsay evidence rule, has historically been defined as *the act talking for itself, not what people say when talking about the act*. Typical of our holdings on the subject is *Rogers v. State*, 88 Ark. 451, 115 S.W. 156 (1908), where the trial court permitted the chief of police to testify: "I asked Fielder who robbed him; he said a white man and a negro; that he did not know who the white man was, but they called the negro Ben Rogers." In holding the admission of such evidence to be reversible error, we there said:

"The Attorney General seeks to sustain the admission of these statements as a part of the *res gestae*. Mr. Wharton's definition and explanation of *res gestae*, quoted in *Little Rock Traction & Electric Co.* v. *Nelson*, 66 Ark. 494, has often been approved by this court. He says: 'Their sole distinguishing feature is that they must be the automatic and necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for, or emanations of, such act, and are not produced by the calculated policy of the actors. They are the act talking for itself, not what people say when talking about the act.' In this case the evidence is what the person said when talking about the act, and was not the voluntary emanation of the act itself."

From reading the majority opinion one could gather that the narration to the policeman by the victim should have been admitted as a dying declaration. However, when the trial court made such a suggestion, the State readily conceded that it was unable to make the requisite showing of a foundation for its admission as a dying declaration.

One of our fundamental concepts guaranteed by the Bill of Rights in both the State and Federal Constitutions is that an accused must be confronted by the witnesses against him. Yet, the majority, by fudging a little on the *res gestae* rule, here have permitted appellant to be convicted on the testimony of the victim without appellant having been confronted by the victim. While the result of a little fudging on the *res gestae* rule here may be justifiable because of the appellant's conduct; yet, as pointed out in *Byler* v. *State*, 210 Ark. 790, 197 S.W. 2d 748 (1946):

"It may be unfortunate that the case will have to be retried, but we think it better that a single case should be retried than to approve an improper precedent for the trial of future cases."

For the reasons stated, I respectfully dissent.