St. Louis, Iron Mountain & Southern Railway Co. *v.* Freeman.

Opinion delivered February 15, 1909.

1. Master and servant—negligence—evidence.—In an action against a railway company to recover for personal injuries of an employee received in a train wreck alleged to have been caused by the defective condition of defendant's track, it was competent for plaintiff to show the defective condition of the track several months before the accident occurred, coupled with proof that tended to establish the continuance of the defective condition down to the time of the accident. (Page 331.)

2.  TRIAL—QUESTION ASKED BY COURT—PREJUDICE.—One of the questions in a suit to recover for the negligent killing of a locomotive engineer was whether his engine had been properly inspected or not, and one of the witnesses testified that under the defendant company's rules it was the engineer's duty to inspect the engine before starting on a run, notwithstanding other rules provided for inspections by other employees at the round house. The court asked the witness: "Is he to put no faith in the inspection of the round house?" *Held,* that the question was not objectionable as stating the court's opinion; also that the question was not prejudicial where it was not answered, and where there was no contention that the engineer was guilty of contributory negligence.   (Page 332.)

3.  INSTRUCTIONS—REPETITION.—Refusal to give correct instructions in a case was not prejudicial where other instructions given covered the same ground.   (Page 333.)

4.  DAMAGES—EXCESSIVENESS.—An award of $20,000 as damages to a wife for the negligent killing of her husband is excessive where the present value of the husband's probable contributions to her during his expectancy of life, making due allowance for probable increase in his earning capacity, did not exceed $15,000. · (Page 333.)

5.  SAME—LATITUDE OF JURY.—While much latitude is allowed to the jury in passing upon what decedent's earning capacity would be if he had lived, their power is not unlimited, and they should not be allowed to indulge in speculation, not warranted by evidence, as to what his increased earning capacity might be.   (Page 334.)

Appeal from Marion Circuit Court; *Brice B. Hudgins,* Judge; affirmed on remittitur.

*T. M. Mehaffy* and *E. B. Kinsworthy,* for appellant.

1.  The verdict is not sustained by the evidence, and is contrary to the physical facts. In view of the condition of the switch stand, switch points, frogs, etc., after the wreck, the verdict is so palpably erroneous as to shock the sense of justice. 70 Ark. 385.

2.  If there was a defect in the engine, and if the flanges were too short, it was such a defect as the deceased knew or by the exercise of ordinary care could have known of. The risk was assumed. .

3.  Evidence of the condition of the switch several months prior to the accident was too remote, was incompetent and prejudicial. 48 Ark. 460, 473; 169 Mo. 409; 87 Fed. 540; 20 R. I. 210; 88 Mo. 348; 28 S. W. 908. The question asked by the trial judge of the witness Elliott, "Is he to put no faith in the in-

spection of the round house?" was prejudicial, being in effect an expression of opinion that the engineer had the right to rely on the round house inspection.

4. There being two conflicting theories as to the cause of the wreck, appellant was entitled to have its theory presented in the instructions 16 and 17. They presented a phase of the case not covered by any other instructions, and should have given. If they had been given, appellee could not complain because they were more favorable to her than the evidence warranted. 57 Ark. 402; 63 Ark. 82.

5. The verdict is manifestly excessive. 60 Ark. 558; 57 Ark. 384; 76 Ark. 377.

*Crump, Mitchell & Trimble, Jones & Seawel,* and *Hamlin & Seawel,* for appellee.

1. The verdict is supported by the evidence, in harmony with the physical facts, and is conclusive. 70 Ark. 512; 66 Ark. 53; 76 Ark. 115; 74 Ark. 478; 34 Ark. 632; 51 Ark. 467; 48 Ark. 495; 87 Ark. 443; 83 Mo. 678; 8 Mo. App. 488; 1 Shear. & Redf. on Neg. 57, 58; 57 Wis. 156; 46 Mo. App. 266; 73 Mo. 219; 23 Tex. Civ. App. 160, 55 S. W. 772; 77 Ark. 1; 75 Ark. 479; *Id.* 61.

2. It was not pleaded that deceased was guilty of contributory negligence, and none is shown; and, on the question of assumption of risk, the servant does not assume the risk of injury growing out of the failure of the master to provide a safe working place and safe appliances. 112 S. W. 988; Labatt, Master & Servant, 229 and 417; 91 Ala. 548; 94 Ala. 545; 97 Ala. 211; 67 Hun 130, 22 N. Y. Supp. 48; 60 N. Y. Supp. 422; 35 S. W. 879; 57 S. W. 693; 87 Ark. 443.

3. Evidence of the condition of the switch prior to the wreck was competent. Evidence was introduced to show the condition of the switch from May, 1907, up to a few days before the wreck. The only object in excluding evidence of the condition of things remote from the injury is that it would not throw light on the condition that existed at the time of the injury. 48 Ark. 460; 91 Mo. 509-517; 118 Mo. 268; 52 Minn. 364; 8 Enc. of Ev. 908; 131 Mich. 442; 96 Ia. 314; 101 Ala. 488. Evidence that the switch was defective and unlocked from May until June,

1907, and at sundry dates thereafter up to the 28th day of November, 1907, was admitted without objection, and appellant cannot now complain; therefore, more remote evidence having been admitted without objection, the testimony of certain witnesses on the same point directed to a later date, even if erroneous, was harmless. 17 Cyc. 61; 112 Mich. 307; 58 Mo. App. 68; 61 Mo. App. 273. Admission of evidence as to the condition of the lock, even if erroneous, was cured by instructions of the court whereby the liability of the appellant was not predicated upon the condition of the lock, but upon the defective condition of the switch-point, main-rail or frog. 85 Ark. 111; 93 Mo. 400-5.

4. There was not, and there could not have been, any error in the question by the court. There was no answer to it. Not only was the question harmless, and, if asked, was no expression of opinion, but, it is the law that an employee has the right to presume that his employer has done his duty in the matter of furnishing safety appliances, and in inspecting same.

5. There was no error in refusing the 16th and 17th instructions requested by appellant. The instructions given covered every phase of the case, and the court was under no obligation under the circumstances to give these particular instructions.

6. The judgment should be affirmed, even if the switch had been thrown by a trespasser. 71 Ill. App. 147; 61 Mo. App. 680.

7. The verdict is not excessive. Deceased was only twenty-four years of age, of excellent habits, sober, economical, industrious, receiving at the time of his death $135.00 per month. It is shown in the record that he turned over all his wages to his wife (appellee), and that it required about one-third of his wages to pay expenses, and the balance belonged to her. 76 Ark. 233; 77 Ark. 1; 87 Ark. 443.

McCULLOCH, C. J. J. C. Freeman was employed by the defendant, St. Louis, Iron Mountain & Southern Railway Company, as an engineer, and was killed in a wreck of his train on December 8, 1907. His widow, as administratrix of the estate, sues to recover damages for the benefit of the next of kin on account of his death. She recovered judgment for $20,000 in the circuit court of Boone County, and defendant appeals to this court.

The wreck occurred at a spur-track near the station of Myrtle, Arkansas, in Boone County, about ten o'clock at night. The

train was north-bound, and was derailed. The contention on the part of the plaintiff is that there was a defect in the point of the switch rail which caused the engine to "split" the switch and leave the rails. On the other hand, it is contended in behalf of the defendant that the switch was thrown by some one for whom the company was not responsible, and that the engine turned in on the spur, and was derailed and turned over because of a weak place in the spur track.

Negligence of the company is set forth in the complaint on account of having permitted the switch point or rail to become defective so that it allowed a space of from one-fourth to one-half of an inch between it and the main rail, and also to become worn or crumbled off at the point; also that the flange on one of the drive wheels of the engine had become worn; and that, by reason of this negligence in one or both of the particulars named, the wheels of the engine mounted the switch rail or passed through the crevice between the two rails so as to cause the engine to split the switch.

The case was submitted to the jury on these questions of alleged negligence, and the principal contention of the defendant here is that the evidence was insufficient to support the verdict. It is contended very earnestly that certain physical facts shown to be in existence were inconsistent with the plaintiff's theory of the case, and that the verdict should be set aside on that account. After a careful consideration of the evidence, we are of the opinion that there was sufficient evidence to warrant the finding of negligence in the particulars named.

The evidence tended to show, from the testimony of several witnesses, that for several months before the accident, and continuing down to within a few days of it, the point of the switch rail was in the condition contended for by plaintiff; that is to say, it was worn and crumbled off at the point, so that there was a space of from a quarter to a half-inch between it and the main rail when the switch was closed. The evidence also tended to show that the flange on one of the drive wheels of the engine was worn so that it was only about one inch in thickness. The conclusion is warranted, from the conditions which were found to exist immediately after the wreck, that the engine and train did not pass into the spur, but that it became derailed, or "split

the switch," as the witnesses term it, and was turned over. Immediately after the wreck occurred, the engine was found lying on its side between the rails of the spur track. There was evidence tending to show that the engine, after being derailed, went for some distance along the main track and then plowed its way between the two tracks, and was turned over; and remained on the spur track. These conditions showed that the switch was not open, as contended for by the defendant, and that the engine did not pass into the spur and become derailed by reason of the weak foundation of the spur track.

There are, on the other hand, certain conditions found to exist immediately afterwards, which tended to show that it was improbable that the switch was closed at the time. But we can not say that these circumstances and conditions were conclusive of that fact. The engine was turned over, and several of the cars were wrecked; and, while all of the conditions found are not explicable on the theory of the plaintiff's evidence that the engine and cars split the switch, we cannot say that they are so inconsistent with the plaintiff's theory as to render the evidence insufficient to justify the finding of the jury. Upon the whole, we are convinced that the state of the evidence was such that the learned trial judge properly submitted the question of negligence to the jury for its determination.

It is contended that the court erred in allowing witnesses to testify as to the defective condition of the switch rail several months before the accident occurred. It is true that the court admitted this evidence, but it tended to establish the continuance of the defective condition down to the time of the accident. It was competent, if for no other purpose, to show that this condition had existed for a long time, in order to establish the fact that the defect was one which should have been discovered by the defendant's agents in time to have repaired it. In *Little Rock & F. S. Ry. Co.* v. *Eubanks,* 48 Ark. 460, this court said: " Where a defective track is alleged to be the cause of a casualty, it is often impracticable to adduce evidence of the condition of the track at the precise moment the casualty occurred. It is enough to prove such a state of facts shortly before or after as will induce a reasonable presumption that the condition is unchanged." The rule thus stated applies here with force. The

plaintiff was unable to produce any witness who saw the switch rail in a defective condition on the day the accident occurred, or for several days preceding. But she did produce witnesses who testified that it had been in that condition for several months, and up to within eight days of the accident. Another witness, introduced by defendant, testified that the rail was not repaired in any way during this space of time not covered by the plaintiff's testimony. It is true that he testified at the same time that the rail was not in a defective condition; but to this extent his testimony was in conflict with that of other witnesses, and the jury had a right to reject it, which they doubtless did. We find no error committed in this respect.

Error of the court is assigned in propounding a question to a witness, introduced by defendant, who testified in substance that under the rules of the company it is the duty of an engineer to inspect his engine before starting on a run, notwithstanding the fact that other rules provided for inspections by other employees at the round-house. The question propounded by the court is as follows: "Is he to put no faith in the inspection of the round house?" Witness gave no answer to this question, but the record shows that the defendant objected to the question, and that his objection was overruled. It is argued that the effect of the question was an expression of the court's opinion that the engineer could have relied entirely on the round house inspection, and not inspected for himself according to the rules. We think that the question cannot be construed as an expression of the court's opinion. The witness was testifying concerning the rules of the company and the duty of certain employees under given circumstances; and the purpose of the question doubtless was to obtain from the witness an expression of his opinion, based upon his familiarity with the operation of trains, as to the diligence that should be exercised by an engineer in his inspection, and how far it would be prudent for him to rely upon the previous inspection at the round house.

Even if the question was erroneous, however, it was not answered, and therefore there could have been no prejudice in propounding it. In no event can we discover any prejudicial effect. The particular matter under inquiry then was as to whether or not proper care had been exercised by the company's servants

in inspecting the engine; and the evidence tended to show that there was a discoverable defect. There is no plea of contributory negligence, and no contention anywhere in the record that the engineer was guilty of any negligence which contributed to his own injury.

Error of the court is assigned in refusing to give the following two instructions, requested by the defendant:

"If you find from the evidence in this case that there are two theories as to how the accident occurred, and that the evidence tends equally to show that it was caused by reason of the switch being tampered with, or that there was some defect, or, in other words, you are unable to tell from the evidence whether the injury was caused by a defect or caused by the switch being tampered with, your verdict must be for the defendant."

"You are instructed that where the evidence tends equally to show that an accident happened in one of two ways, the plaintiff cannot recover; therefore, if you find from the evidence in this case that the evidence tends as strongly to show that the accident was caused by some person having broken the lock and tampered with the switch as it goes to show that it happened because of some defect, then your verdict must be for the defendant."

Without deciding whether these instructions were accurate, it is sufficient to say that they were covered by other instructions given at the instance of both parties. The court charged the jury that there could be no recovery by the plaintiff unless she established by a preponderance of the evidence the fact that the injury had been caused by negligence of the company's servants in the particulars set forth in the complaint. Numerous instructions were given at the request of the defendant submitting the case to the jury on these disputed questions of fact; and, even if the two instructions quoted above are conceded to be correct, there was no prejudicial error in refusing them.

It is contended that the verdict is excessive. Plaintiff's decedent was shown to have been twenty-four years of age, a man of good habits, healthy, intelligent and industrious. He left no children. The case was therefore stripped of all elements of damage except as to the amount of his probable contributions to those dependent upon him. The evidence tended to show

a present earning capacity at the time of his death and contribution to his wife of $900 per annum. It tended to show also, and the jury were warranted in finding, that his earning capacity would probably have been increased—to what extent is a matter of speculation. It is shown that his wages had been increased from time to time, and that he was in line of promotion. According to the annuity tables, placing his contributions at $900 per annum, computing at the rate of 6 per cent. per annum, the recovery should have been for $10,845. Making due allowances for the probable increase in his earning capacity, we are of the opinion that the evidence is insufficient to sustain a verdict for more than $15,000. While much latitude is allowed the jury in passing upon what the earning capacity will probably be, the power of the jury in this respect is not unlimited. They should not be allowed to indulge in extravagant speculation, not warranted by the evidence, as to what the increased earning capacity might be. The burden of proof is on the plaintiff to produce evidence which tends to throw light upon the question, in some substantial way, as to what the future earnings will probably be and the present value thereof to those who were dependent on the decedent. *Railway Company* v. *Robbins,* 57 Ark. 384.

If the plaintiff will, within fifteen days, enter a remittitur down to $15,000, the judgment will be affirmed; otherwise it will be reversed and remanded for new trial.