PULASKI GAS LIGHT COMPANY *v.* McCLINTOCK.

Opinion delivered January 30, 1911.

1.  PLEADING—AMENDMENT TO CONFORM TO PROOF.—Where, without objection, plaintiff introduced evidence tending to prove a cause of action not alleged in the complaint, and the trial court treated the issue as thus joined on the proof, the complaint will be treated on appeal as amended to conform to the proof. (Page 582.)

2.  GAS—DEGREE OF CARE IN HANDLING.—Persons engaged in the manufacture and distribution of gas are required to use a degree of care commensurate with the danger which it is their duty to avoid. (Page 582.)

3.  NEGLIGENCE—PROXIMATE CAUSE.—In order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence, and that it ought to have been foreseen in the light of the attending circumstances, but it is not necessary that the particular injury which did happen should have been actually foreseen. (Page 583.)

4.  GAS—NEGLIGENT DEATH—CONTRIBUTORY NEGLIGENCE.—Where a gas company cut off a service pipe at the curb line of decedent's premises and left it exposed, but without his knowledge put in a new service pipe near the old service pipe, and connected the new pipe with a "riser" under decedent's porch, and decedent, seeing this riser and supposing it was a part of the old service pipe, undertook to remove it and was asphyxiated, *held,* that a finding that decedent was not negligent is supported by the evidence. (Page 586.)

5.  DAMAGES—EXCESSIVENESS.—Where the evidence showed that decedent was a strong, healthy man, with a life expectancy of 22 years; that he was industrious and earned $90 per month, all of which he

contributed to the support of his family except what he spent for clothing, that his habits were good, and that he was a kind and affectionate father, a verdict for $10,000 for his death was not excessive. (Page 586.)

Appeal from Pulaski Circuit Court; *F. Guy Fulk,* Judge; affirmed.

*E. W. Kimball, J. W. & M. House* and *J. W. House, Jr.,* for appellant.

1. McClintock's own act in disconnecting the riser made him responsible for the injury, and he was guilty of contributory negligence which was the proximate cause of the injury. When an independent act of a responsible person intervenes between defendant's negligence, if any, and the injury sustained, such act breaks the causal connection between negligence and damages, and he who is guilty of the original negligence is not chargeable. 66 Ark. 68, 71-2; 49 Am. St. 199; 27 *Id.* 753; 23 *Id.* 220; 117 Mass, 533; 24 R. I. 292; 96 Am. St. 713; 59 Miss. 430.

The law only imposed ordinary care on the gas company in the construction and repair of its pipes; and if the gas did not escape by any act of defendant, but through the independent act of another, it was not responsible. 49 Am. St. 199; 37 Atl. 263; 71 N. Y. 33; 90 Am. St. 773; 39 Atl. 296; 31 S. E. 914; 69 Am. Dec. 233; 20 L. R. A. 342; 70 S. W. 49; 62 Ark. 109.

2. The court erred in its instructions. A person who voluntarily and under no immediate necessity exposes himself to danger can not recover from another, even though the latter be guilty of negligence. 59 Ill. App. 459; 66 *Id.* 201; 76 *Id.* 672; 77 *Id.* 56; 75 *Id.* 198; 67 *Id.* 649; 83 *Id.* 600; 68 *Id.* 300; 85 N. Y. S. 728; 69 Am. Dec. 233; 19 Am. R. 421; 49 *Id.* 199; 66 Am. Dec. 406, note 409; 6 Allen, 105; 66 Am. Dec. 623, note 627.

3. No one can recover for wrong where he has consented or contributed to the act which occasioned the damage. 6 Allen 105; 104 Mass. 62; 69 Am. Dec. 236; 62 Ark. 109.

4. The remarks of counsel were highly prejudicial. 74 Ark. 298; 70 *Id.* 305; 75 *Id.* 577; 74 *Id.* 210; 74 *Id.* 258.

5. The verdict is excessive. 57 Ark. 377.

*Mehaffy & Williams* and *Downie, Rouse & Streepey,* for appellee.

1.   Gas is a dangerous agency, and those engaged in handling it ought to use every precaution suggested by experience and the known danger of the subject.   62 Ark. 109; 57 Ga. 29; 18 L. R. A. 759.

2.   The company's negligence was the proximate cause of the injury.   94 U. S. 476; 69 Ark. 402; 4 Am. & E. Ann. Cases, 150; 73 N. E. 1002.   The principle laid down in 63 Ark. 81 is conclusive of this case.   61 Ark. 381.

3.   No contributory negligence is shown.   35 N. Y. 28; 90 Am. Dec. 761; 22 N. Y. 215; 78 Am. Dec. 178; 108 Ill. App. 187; 82 Md. 118; 57 Ga. 29; 62 Ark. 109; 49 Am. St. 199; 37 Atl. 263; 71 N. Y. 33.

4.   The instructions embody the law.   62 Ark. 109; 72 Ark. 579; Thompson on Negl. § 7630.

5.   The argument of counsel was harmless.   74 Ark. 256.

6.   The verdict clearly not excessive.   89 Ark. 333; 71 *Id.* 258; 60 *Id.* 550; 76 *Id.* 227.

Kirby, J.   This was an action by appellee for damages for the wrongful death of James McClintock, alleged to have been caused by the negligence of appellant.   The complaint states "that plaintiff's intestate, James McClintock, for several years prior to and until the 17th day of March, 1909, resided in a house and lot on West Seventeenth Street, which had been his property and his residence continuously; that on the 17th day of March, 1909, plaintiff's intestate was engaged in some work on his premises under his residence, and was suffocated and died because of the escape of illuminating gas from the mains of the defendant, negligently permitted to escape, and plaintiff's intestate's death was due to such negligent act of the defendant: * * * that said plaintiff and her children are damaged by the negligent act of the defendant in the sum of fifteen thousand ($15,000) dollars; that plaintiff's intestate suffered great physical pain and mental anguish from his injuries until his death, and that his estate was damaged in the sum of five thousand (5,000) dollars."

To this complaint the appellant filed an answer, denying each and every allegation in the complaint, and afterward the appellee filed an amendment to her complaint, which is as follows:

"Comes the plaintiff by leave of the court and files this amendment to her original complaint herein, and states that the defendant negligently failed to install a stop box on a level with the sidewalk and just immediately next and inside the curb line when it laid its service pipes on plaintiff's premises, as it was required to do by ordinarnce No. 1020 of the city of Little Rock, Campbell & Stevenson's Digest of Ordinances of City of Little Rock, Ark., on account of which negligence in failing to install a stop box plaintiff's intestate was killed."

Appellant denied every material allegation of the complaint; that James McClintock's death was due to any negligent act on its part, and alleged "that, if he was suffocated by gas, it was because of his own carelessness and negligence in handling the pipes and fixtures of the defendant company, and such carelessness and negligence upon his part directly and proximately contributed to his death, and for which this defendant company is in no way responsible."

The testimony tended to show that James McClintock was asphyxiated and killed by gas escaping from the one-inch service pipe from appellant's mains which he disconnected under the front porch of his residence by unscrewing the "riser" on the morning of March 17, 1908, between 7 and 8 o'clock. He had been engaged in removing an old service gas pipe from his premises which was cut off at the curb line and left in the ground by the gas company when they lowered their mains upon the grade of the street being cut down in 1905, and when they put in a new service pipe from the main deeper in the ground than the old and at right angles to the main and within about a foot of and parallel to the old pipe and connected it with the same riser under the porch that had connected the old service pipe with the meter and the house. The end of this old pipe stuck out of the ground two or three inches over the curb line, and the sidewalk was being cut down to grade, and left it exposed across the sidewalk and an obstruction, and McClintock then unscrewed and broke and pulled up this old pipe, as the ground showed, to near the edge of the porch, under which the riser stood. The porch was about 20 inches high, and he digged a hole with a file about a foot in circumference around the riser, about eight inches deep, and to within about two inches of where

it screwed into the elbow on the end of the service pipe. He took a pipe wrench and turned it, and it unscrewed at the elbow at the bottom of the hole, although there were three other places on it between the wrench and the elbow where it could have been unscrewed. He was found dead, under the porch about to his hips, lying on his belly stretched out with both hands in front of him in line, as if he tried to shove and couldn't, as a witness says, with his face pretty near right over the pipe from which the gas was spurting out. The pipe wrench was lying on his left and the disconnected riser or "goose-neck" as some witnesses call it, to his right, and the file was in the hole. The gas was first installed in the house in 1899, while deceased lived there with his sister. The one-inch service pipe was laid from the main in the street in front at right angles with it under the ground extending under the front porch about three feet where it connected with the riser or upright piece of pipe upon the top of which was a lead pipe goose-neck for connecting the meter and a meter cock to turn on and shut off the gas when the service was discontinued. The gas service in the house had long been discontinued, and the meter removed, but when or by whose direction the testimony does not show, and the gas was shut off by the meter cock on the riser near the top of it, leaving the gas in the main free access to the service pipe and the riser to where the meter cock stopped it. The premises were occupied by a tenant from 1903 to 1907 in the fall, when McClintock and his family moved in, and no gas had been used in the house since 1903. In 1905 the grade of the street was lowered and appellant's mains, and a new service pipe was put into the McClintock house without any request from or notice to him, and the old one disconnected and left in the ground as already stated. Deceased had been married about six years, and lived in Little Rock in 1905, went to Louisiana in 1906, and with his wife first moved into this house in the fall of 1907. There was no testimony tending to show that he had any knowledge of the fact that a new service pipe had been put in, or that the riser, which was the same size as the old pipe and smaller than the new, was connected with a live service pipe other than the riser itself as it stood there.

The ordinances of the city did not require the gas to be

installed on the premises with a stop box and service cock at the curb to cut off the gas when the service was discontinued, and it was shown that the meter cock on the riser cut it off as effectively and safely, so far as the escape of gas was concerned, as the stop box would have done. No gas escaped nor could any have escaped but for the action of deceased in unscrewing the riser which he could not have done without the aid of a pipe wrench. There was conflicting testimony as to whether death could be produced by asphyxiation from gas escaping in the open air, some of the witnesses saying it was unheard-of and also as to whether death caused by asphyxiation by suddenly inhaling a large volume of illuminating gas would be so speedy as to be without pain and suffering. The court gave seven instructions as requested by appellee and six of the 23 requested by appellant, amending two of them by inserting the word "voluntarily."

Appellant asked the court to instruct a verdict for defendant company, which he refused to do, and of his own motion did instruct the jury to return a verdict for defendant upon the second count of the complaint, which asked damages for physical pain and mental anguish suffered by deceased.

Objection was made to some remarks of Hon. J. E. Williams, of counsel for appellant, in his closing argument to the jury, part of which were withdrawn, and the jury instructed to disregard, and to the following which were made over appellant's objection: "Answering the argument of the counsel for the defendant that the deceased was guilty of contributory negligence in remaining under the porch and trying to stop the flow of gas after he was aware of the escaping gas: This question can not be considered as showing or tending to show any contributory negligence upon the part of the deceased, because the court has instructed you as a matter of law that there could be no recovery for pain and suffering and has directed a verdict for the defendant on that ground that the deceased's death was instantaneous and without any conscious suffering; and if he died instantaneously, was killed immediately by the escaping gas, he could not be guilty of contributory negligence in remaining there and fighting the gas which was killing him;" counsel insisting that this phase of the question of contributory negligence had

practically been concluded by the court's holding as a matter of law under the evidence that the deceased's death was instantaneous.

The jury returned a verdict for $10,000 damages for the widow and next of kin, and appellant appealed.

The complaint alleged that appellant was negligent in permitting the gas to escape and in failing to install a stop box at the curb line and cut it off there as required by the ordinances of the city of Little Rock. Appellant strongly insists here that, since no other negligence was alleged and the proof is unquestioned that the gas could not have escaped and caused injury but for the action of the deceased in disconnecting the riser and releasing it, and also since no ordinance required the installation of a stop box, the court erred in refusing to give the peremptory instruction as requested. But evidence was introduced without objection directed to the issue of negligence on the part of appellant in putting in gas service with a new pipe entirely underground without request from or notice to deceased and confining the gas with the old riser and meter cock that had been connected with the old pipe at about the same place under the porch, instead of cutting it off with a stop box at the curb, and leaving the old disconnected service pipe in the ground with one end exposed at the curb line showing it was dead and not connected with the main, and the other still apparently connected with the riser as it had been; and the court below so treated the issue as thus joined on the proof, and the complaint will be treated here as amended to conform to the proof. *Roach v. Richardson,* 84 Ark. 41.

It is next contended that appellant's conduct, if negligent, was not the proximate cause of the injury, and, third, that the injury was produced by deceased's contributory negligence in disconnecting the riser.

The degree of care required of persons engaged in the manufacture and distribution of gas to guard against injury to persons and property was defined in *Pine Bluff Water & Light Co.* v. *Schneider,* 62 Ark. 109, where this court said: "The company must use a degree of care commensurate to the danger which it is its duty to avoid. If it fails to exercise this degree of care, and injury results from such negligence, the company is liable.

if the person injured is free from fault contributing to the injury;" citing authorities. See also *Koelsch* v. *Philadelphia Co.,* 18 L. R. A. 759.

Appellant installed gas in McClintock's house in the usual way by placing a one-inch service pipe underground from its main in the street in front, and at right angles with the main, to about three feet under the front porch, where it connected with the riser, near the top of which was the meter cock and the meter, which connected with the pipes in the house. Deceased was living there with his sister at the time. The gas service was discontinued, the meter removed and the gas shut off at the meter cock, but when or by whose direction it does not appear. There was no gas service in the house during the time it was occupied by Professor Rust, a tenant, from 1903, to 1907 in the fall, when McClintock and his wife moved back from Louisiana and first moved in, nor thereafter. The grade of the street was cut down, and the gas company lowered its mains, in 1905, and, without request from or notice to McClintock, installed a new service pipe connected with the main and placed deeper in the ground than the old, and near and parallel to it, connecting it with the riser that had been connected with the old pipe at about the same place under the porch, leaving the old disconnected service pipe in the ground with one end exposed at the curb line, showing that it was dead and not connected with the main, and the other apparently still connected with the riser as it had been.

Here was a deceptive and misleading condition created by appellant entirely different from that existing when deceased moved from the premises, and in cutting his sidewalk to grade the old disconnected service pipe was exposed, and it became necessary or desirable to remove it. This he set about doing the morning of his death, and unscrewed, broke off and pulled up this pipe to near where it went under the porch, on a line to the riser with which it had been connected when he moved away. He then crawled under the porch, which was about 18 inches high, and enclosed on three sides, and unscrewed the riser, that the remainder of the old pipe might the more easily be removed, He knew that there was no gas in the old pipe, that none had been used in the house since 1903, that the riser had been connected with this pipe when he went away, and, even if he be held

to know that the street had been graded down and the gas mains necessarily lowered—which we by no means decide—he knew that he had not since ordered nor consented to the service being again extended to his house, or had any notice that it was done. There was nothing whatever to indicate that this riser was connected with a live service pipe, as it stood there where it had seven years before been connected, and still appeared to be, with the old service pipe now dead. He digged about and unscrewed it, and a stream of gas from an inch pipe shot up in his face, overcame, asphyxiated and paralyzed him; that he fell with his face over the hole he had digged, from which the gas was escaping, and died. What was the proximate cause of the injury?

This is not a question of science or knowledge, and is a question ordinarily for the jury, to be determined as a fact from the particular situation, in view of the facts and circumstances surrounding it. The primary cause may be the proximate cause of disaster, though it may operate through successive instruments. *Milwaukee, etc., Ry. Co.* v. *Kellogg,* 94 U. S. 476, 24 L. Ed. 256; *Waters-Pierce Oil Co.* v. *Deselms,* 212 U. S. 177, 53 L. Ed. 463.

"But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Milwaukee, etc., Ry. Co.* v. *Kellogg, supra.*

Our court said, in *Gage* v. *Harvey,* 66 Ark. 68: "In determining whether an act of a defendant is the proximate cause of an injury, the rule is that the injury must be the natural and probable consequence of the act—such a consequence, under the surrounding circumstances of the case, as might and ought to have been foreseen by the defendant as likely to flow from his act."

And in *St. Louis, I. M. & S. Ry. Co.* v. *Bragg,* 69 Ark. 402: "It is a fundamental rule of law that to recover damages on account of the unintentional negligence of another it must appear that the injury was the natural and probable consequence thereof,

and that it ought to have been foreseen in the light of the attending circumstances."

It is not necessary that the particular injury should have been foreseen. In *Foster* v. *Chicago, R. I. & P. Ry. Co.,* 4 Am. & Eng. Ann. Cas. 150, 127 Iowa 84, the court said: "Doubtless, the particular situation might not have been foreseen, but this was not essential to making out a charge of negligence. Accidents as they occur are seldom foreshadowed; otherwise many would be avoided. If the act or omission is of itself negligent and likely to result in injury to others, then the person guilty thereof is liable for the natural consequences which occurred, whether he might have foreseen it or not. In other words, if the act or omission is one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others, then he is liable for any injury proximately resulting therefrom, although he might not have foreseen the particular injury which did happen."

In *Baltimore & O. Rd. Co.* v. *Slaughter,* 7 L. R. A. (N. S.) 597, 167 Ind. 330, the court said: "To entitle one to a trial of the question of another's negligence which resulted in injury, it is not necessary that the effect of the act or omission complained of in all cases, or even ordinarily, be to produce the consequences which followed; but it is sufficient if it is reasonably to be apprehended that such an injury might thereby occur to another while exercising his legal right in an ordinarily careful manner."

Here the negligence of appellant consisted in cutting off from the main the old service pipe and leaving it there exposed, still apparently connected with the riser, thus showing the gas was shut off from the premises, and installing the service again with another pipe deeper in the ground, and instead of cutting it off at the curb confining the gas with the old riser and meter cock, which still appeared to be connected with the old dead service pipe he was removing, long after the use of gas in the house had been discontinued, and without the knowledge or consent of deceased or anything to put him on notice that gas was on the premises.

"There was no intermediate cause disconnected from the primary fault, and self-operating, which produced the injury, and such negligence was the proximate cause of it." *Milwaukee, etc.,*

*Ry. Co.* v. *Kellogg, supra; The G. R. Booth,* 171 U. S. 450, 43 L. Ed. 249; *Waters-Pierce Oil Co.* v. *Deselms, supra.*

While it is true that the deceased could not have been killed by the escaping gas if he had not unscrewed the riser, still he had the right to remove this apparently disconnected and dead gas pipe from his premises; and if he exercised as much care in doing so as an ordinarily prudent man would have done under the circumstances, he was not guilty of contributory negligence which would bar his recovery. This was a question that was fairly submitted to the jury, and within their province, and upon which they have decided in appellee's favor; and there is ample evidence to sustain their verdict. The issues in the whole case were fairly submitted on proper instructions.

There was no error committed in inserting the word "voluntarily" in appellant's two requested instructions before giving them, as otherwise they would have told the jury to find for the defendant if deceased disconnected the riser and inhaled the gas, without regard to his ability to keep from inhaling it after the disconnection was made.

Some of the remarks of Hon. J. E. Williams, of counsel for appellee, in his closing argument, to which objection was made, were withdrawn and the jury admonished to disregard them, and we can not see that any prejudice could have resulted. As to other remarks which were not withdrawn, in which he argued to the jury that, since the court had instructed a verdict for defendant on the second count of the complaint, in which damages for pain and suffering were asked, because death had been instantaneous and without suffering, there could no longer be any question of the contributory negligence of deceased in remaining under the house and attempting to connect the gas, according to appellant's theory of the injury, such remarks were not improper nor more than the correct inference to be drawn from such instruction.

Was the verdict excessive? The evidence shows that deceased was a strong, healthy man, with a life expectancy of 22 years; that he was industrious and earned about $90 per month, all of which he contributed to the support of his family except what he spent for clothing; that his habits were good; that he was a kind and affectionate father and took great interest in the

training of his two little children. Under those facts the verdict of $10,000 was not excessive. *St. Louis, I. M. & S. Ry. Co.* v. *Freeman,* 89 Ark. 326; *St. Louis, I. M. & S. Ry. Co.* v. *Haist,* 71 Ark. 258; *Railway Co.* v. *Sweet,* 60 Ark. 550; *St. Louis, I. M. & S. Ry. Co.* v. *Robert Hitt,* 76 Ark. 227.

Finding no reversible error in this cause, the judgment is affirmed.

MCCULLOCH, C. J., (dissenting). The state of the proof was such that the court should have submitted to the jury the question whether McClintock was guilty of contributory negligence in remaining under the house after he discovered the presence of gas in the pipe from which he was removing the gooseneck. There was evidence which would have warranted the jury in finding that enough gas escaped while he was unscrewing the pipe to apprise him of the presence of gas before it escaped in sufficient quantity to asphyxiate him and in time to have made his escape. The court gave instructions submitting the question of contributory negligence, but they were in effect withdrawn by the court's approval of the remarks of counsel. The overruling of defendant's objection was in effect an approval of the remarks, and was the same as if the court had in express terms withdrawn its former instructions and refused to submit the question of contributory negligence. It is true that the court had directed the jury not to consider the element of pain and suffering, but this was not on the ground that the death was instantaneous after the gas began to escape. It would have been error for the court to have told the jury that death was instantaneous as soon as the gas began to escape, for that was a disputed question of fact. The court was correct, however, in withdrawing from the jury the element of pain and suffering, for the undisputed proof showed that death by asphyxiation was painless. This court now holds that the plaintiff was entitled to recover on the theory that the defendant negligently created a deceptive condition which misled McClintock, by leaving the old pipe exposed and gas in the new pipe. If the court is correct on that question, the error in withdrawing the question of contributory negligence is distinctly emphasized; for if McClintock was in fact deceived into attempting to unscrew the joint of the pipe which he supposed was an old unused one, the moment that he detected the escape

of gas it should have warned him that he was mistaken in supposing that the pipe contained no gas.

As already stated, I think there is abundant proof to have warranted the jury in finding that there was sufficient escape of gas to give him warning in time to make his escape before he entirely removed the pipe so as to allow it to escape in sufficient volume to kill him.

Mr. Justice WOOD concurs in what I have thus far said.

In addition to this, I am of the opinion that leaving the old pipe exposed was not the proximate cause of the injury, and that the plaintiff entirely failed to make out a case for the recovery of damages. But, even if the case could be rested upon that theory, it seems clear to me that that issue was not embraced in the pleadings, and was not submitted to the trial jury. The whole record shows that the trial proceeded upon the theory of negligence in failing to install a stop box at the curb. This runs through all the instructions given by the court. It is true that one or two of the instructions mention the fact of the old pipe being exposed, but that is mentioned only as one of the conditions existing at the time, and not as an act of negligence for the jury to consider. It is evident to my mind that the jury based its verdict upon the failure of defendant to install a stop box, and it is now conceded that according to the undisputed proof that was not an act of negligence, for the meter cock at the end of the pipe prevented the escape of gas as effectually as a stop box at the curb, and the gas escaped solely on account of McClintock unscrewing the joint.