MARTIN *v.* CAMDEN GAS COMPANY.

Opinion delivered May 6, 1929.

*McMillen & Scott* and *Haynie, Parks & Westfall,* for appellant.

*Robinson, House & Moses* and *Powell, Smead & Knox,* for appellee.

KIRBY, J., (after stating the facts). Appellant's contention that instruction No. 21 was erroneous must be sustained.

Appellee was engaged in the distribution of gas to inhabitants of the city of Camden under a franchise, and purchased its gas for distribution from the Arkansas Natural Gas Corporation, which was delivered into its pipes by said company at the corporate limits of the city. It can make no difference in its liability for negligence in the distribution to its customers that it pur-

chased the gas from another company or corporation, since it must answer for its negligence or want of care in the distribution of gas to consumers to the same extent as though it had produced and piped the gas from the fields or manufactured it.

In *Pulaski Gas Co.* v. *McClintock*, 97 Ark. 576, 134 S. W. 1189, 32 L. R. A. (N. S.) 825, this court said: "The degree of care required of persons engaged in the manufacture and distribution of gas to guard against injury to persons and property was defined in *Pine Bluff Water & Light Co.* v. *Schneider*, 62 Ark. 109, 34 S. W. 547, where this court said: 'The company must use a degree of care commensurate to the danger which it is its duty to avoid. If it fails to exercise this degree of care, and injury results from such negligence, the company is liable, if the person injured is free from fault contributing to the injury;' citing authorities."

The rule is stated in note to 25 A. L. R. 262, in support of which our cases are cited, as follows: "The rule deducible from the reported decisions is that, in view of the highly dangerous character of gas and its tendency to escape, a gas company must use a degree of care to prevent the escape of gas from its pipes proportionate with the danger which it is its duty to avoid, and if it fails to exercise that degree of care, and injury results therefrom, the company is liable, provided the person suffering injury, either in person or property, is free from contributory negligence." See also 12 R. C. L., § 46, p. 905, and 28 C. J. p. 590, § 56.

The appellee company was delivering gas through its pipes and meter furnished by it, and set up immediately in front of the fire-boxes or furnaces under the boilers of appellant ice company, where gas escaping from a defective meter would necessarily become ignited from the fire when the plant was in operation, and explode, resulting in damage. It is undisputed that the meter was old and defective and only made to withstand a pressure of 50 pounds, and also that the pressure of

gas in the pipes coming through the meter was 78 pounds at the time of the explosion, more than one-half again as great as the meter was expected to withstand. The appellee was distributing its own gas, purchased, it is true, from the Arkansas Natural Gas Corporation, through its own pipes and meter to its consumer, was responsible to it, and bound to the exercise of the care required by law of it in such distribution, without regard to whether some one else was also negligent or whether the gas pressure had been increased to a dangerous point by the gas company from whom it purchased the gas for distribution. In other words, it was distributing its own gas through its own appliances and instrumentalities, and was necessarily responsible for damages resulting from its negligence in so doing. It could make no difference in its liability to its customers that the pressure was increased by the agents of the Arkansas Natural Gas Corporation or other persons not employed by the appellee, since it was bound to the exercise of the degree of care prescribed by law, and to know, under the circumstances of this case, of the condition existing, and the court erred in giving said instruction No. 21, which was erroneous and prejudicial.

There is some testimony indicating that the engineer feared the pressure was dangerously high at the time he left the boiler room, and also that there was a cut-off on the gas line which, if used by him, would have stopped the gas from coming into the meter; but this cut-off was put there by the appellee company for its own use, and the agents of appellant company were directed not to use it. It is true he left the boiler room, where the meter showed the 50-pound pressure, went to change his clothes, and was away for a few minutes, during which time the explosion occurred, but the meter showed the pressure in the pipes at 50 pounds only, which pressure it was originally made to withstand and always had held, and, although the meter was made and limited to not register beyond 50 pounds pressure, and he could not have known

that the pipes were carrying 78 pounds pressure at the time, the majority is of opinion that there was enough testimony to take the case to the jury on the question of contributory negligence, the engineer's knowledge of the condition, and his failure to cut off the supply of gas to the fire or to cut the gas off on the appellee's side of the meter with the cut-off which he had been directed by appellee not to use. It is not complained that he did anything that could have contributed to the explosion and fire, but only that he failed to take some action that might have resulted in preventing it. We do not think therefore, under the circumstances, that the instruction complained about, No. 14, was abstract and should not have been given, although it had been better to use "ordinary" instead of "reasonable" in defining the care required.

For the error designated the judgment is reversed, and the cause remanded for a new trial.

HART, C. J., dissenting.