FEDERAL COMPRESS & WAREHOUSE COMPANY v. FREE.

4-3832

Opinion delivered May 6, 1935.

C. A. Cunningham, for appellants.

Elbert W. Price, for appellee.

BAKER, J.  E. L. Free, appellee, filed suit in the circuit court of White County against Federal Compress & Warehouse Company and J. C. James, for damages resulting from the loss of eight bales of cotton, which loss he alleged was caused by the negligence of the appellants. The facts upon which this suit was based may be stated as follows, omitting many of the details:

About November 2, 1933, E. L. Free delivered to the compress at Searcy eight bales of cotton and left same for storage.  He and his witnesses contended and testified that they instructed the weigher, J. C. James, one of the appellants, to write the warehouse receipts in the name of E. L. Free.  The eight receipts were executed by James as the agent of the compress company and delivered to Free.  Each one of the eight receipts called for one bale of cotton to be delivered on surrender of the receipt therefor.  E. L. Free says that at the time the receipts were given to him they were folded, and that he put them in his pocket without examining them, and took them to the Bank of Searcy and left them with the bank to have the cotton they represented insured, and as collateral for a loan granted him by the bank, making request at the time that the bank deliver to him a note pay-

able to him, and which he had put up as collateral security for a debt he owed the bank. He had prior to that time delivered to the bank two compress receipts for other cotton stored, and this was also security for the debt. The bank delivered to E. L. Free the note, which he had put up as collateral security and took the receipts. At that time and for a considerable time thereafter, E. L. Free did not know that the compress receipts delivered to him were written in the name of W. W. Free, instead of E. L. Free. W. W. Free was blind and unable to attend to business matters. It appears that he had also deposited compress receipts with the bank for three bales of cotton.

At the time E. L. Free deposited the eight compress receipts with the bank, he advised the bank, if it desired to do so, to collect the debt against him, to sell the cotton, pay his debt, and credit his account. Later E. L. Free desired to get a little more money and went back to the bank with the request for an additional $10, and says at that time the bank loaned him $10, and advised him that his cotton was free. He advised the bank that he owed the $50 for which the cotton was pledged, and says that the bank advised him all his receipts were there. A little later the bank received an order signed by W. W. Free, reading as follows: "Bank of Searcy. Please let E. B. Free have my compress receipts." Upon this order the bank delivered to E. B. Free eleven compress receipts for eleven bales of cotton, and E. B. Free sold the cotton, paid one or two small accounts for his brother, and delivered to W. W. Free the remainder of the money. About April, 1933, E. L. Free demanded from the bank the eight compress receipts he had delivered to it, and, perhaps, at that time, first learned that James had written the receipts in the name of W. W. Free instead of E. L. Free, and that upon the order above mentioned, the Bank of Searcy had delivered the receipts to E. B. Free, and the cotton had been sold. E. L. Free sued the Bank of Searcy for damages for the wrongful delivery of the receipts. The Bank of Searcy answered, denied any negligence, asked that E. B. Free and W. W. Free be made parties, and that upon trial of

that case judgment was rendered in favor of E. L. Free against W. W. Free for the value of cotton, but no judgment or decree was rendered against the bank or E. B. Free. E. L. Free, being unable to collect the money from W. W. Free, filed this suit in the circuit court and took judgment against the appellants for the value of his cotton, and it is from this judgment this appeal comes.

It is argued by the appellants that, if E. L. Free was damaged, the damage resulted from his own carelessness in not giving the Bank of Searcy correct directions at the time he left the warehouse receipts with it, or from the carelessness or negligence of the Bank of Searcy in not obeying the directions of Free, and making delivery of the warehouse receipts to the wrong person, or the combined negligence of the plaintiff and the Bank of Searcy, and also that, E. L. Free having elected to sue the bank, and having taken a decree in the White Chancery Court, in that suit, against W. W. Free, all of the issues which could be adjudicated in this action were tried and adjudicated in the former suit.

It is sufficient to say of the facts brought forward in the bill of exceptions that they justify the verdict of the jury and judgment of the court, provided only there was no error in the submission of the cause to the jury and provided further that the facts as above stated and established by the verdict are not contrary to the law.

The questions of law presented in this case by appellants are discussed under three heads. First, were the warehouse receipts negotiable? Second, were the warehouse receipts pledged to the bank? Third, were the warehouse receipts lost because they carried the wrong name or because of the negligence of the Bank of Searcy?

The answers to these questions will settle all of the law involved in this appeal.

Although, some observations were made as to instructions and brought forward in the bill of exceptions, these have been waived in the presentation of the case in appellants' brief.

Although, we see no strict necessity of answering the first question as to the negotiability of warehouse receipts, we have only to refer to the statutes to settle

whatever apparent controversy there may be in regard to this matter. These warehouse receipts were negotiable. See Crawford & Moses' Digest, §§ 792, 10,349, 10353. See also *Weaver Cotton Co.* v. *Batesville Compress Co.,* 168 Ark. 387, 270 S. W. 509.

As to the second proposition submitted: "Were the warehouse receipts pledged to the bank?", according to the testimony of the appellee in this case, there can be no doubt that such was his intention, when he left the receipts and asked that the cotton be insured, to pledge these receipts as security for the debt for which he had pledged the note. He advised the bank that, if it desired to do so, it might sell his cotton. The bank officers probably understood that E. L. Free was referring to the first compress receipts delivered to it, and not to the last. This is made more nearly certain by reason of the fact that it did not insure this cotton in the name of E. L. Free, but wrote the insurance for W. W. Free, and it therefore may be said that the bank was relying upon the security held by it in the pledge of the two former receipts delivered to it by E. L. Free.

This very uncertainty, as to whether it was a pledge, or merely an offer, on the part of E. L. Free, to pledge the cotton, aids us in the solution of the third problem, that is, was the cotton lost by reason of the negligence of James and the compress company in writing the wrong name into the receipts, or by reason of some negligence on the part of E. L. Free, or of the Bank of Searcy, in handling the receipts? It is apparent, and the jury must have found, that E. L. Free delivered these compress receipts to the bank without any examination of them. He had given proper directions to James for preparation of the receipts, and there was nothing to cause him to suspect an error. Free asked the bank to insure the cotton. The bank was misled by the error made by James in writing the receipts, and issued the insurance in the name of W. W. Free, assuming, of course, that this cotton belonged to W. W. Free. Later when the bank received the order from W. W. Free to deliver all his compress receipts to the other brother, E. B. Free, it promptly complied with the request and delivered over all of the re-

ceipts written in the name of W. W. Free, eleven bales in all. The bank assumed, by reason of this mistake in the name, that on each occasion the respective brothers were acting for the more nearly helpless or blind brother, W. W. Free. That was the question that was submitted to the jury for its determination. The jury found, and we think the verdict is amply supported by the testimony, that the loss was occasioned by the negligence of the compress company, and its weigher, and not by the negligent conduct of E. L. Free or the Bank of Searcy. The jury found no negligence in the conduct of E. L. Free, and none on the part of the bank causing the loss. We cannot determine, as a matter of law, from facts properly submitted to the jury that either was negligent. The bank did not know that E. L. Free, and not W. W. Free, was the owner of the cotton. This lack of knowledge on the part of the bank relieves it of the charge of negligence and makes inapplicable the cases of *Gage* v. *Harvey,* 66 Ark. 68, 48 S. W. 898, 43 L. R. A. 143, 74 Am. St. Rep. 70, and *Pittsburg Reduction Company* v. *Horton,* 87 Ark. 576, 113 S. W. 647, 18 L. R. A. (N. S.) 905; *Arkansas Valley Trust Co.* v. *McIlroy,* 97 Ark. 160, 133 S. W. 816, 31 L. R. A. (N. S.) 1020, and other cases cited on this point by appellants.

Several incidents may occur in regular or natural sequence, but it is not necessarily true that the primary cause thereof is, on that account, not the proximate cause of the injury suffered.

''The question of proximate cause, as this court has already said, is not one of science or legal knowledge, and is a question ordinarily for the jury, to be determined as a fact from the particular situation, in view of the facts and circumstances surrounding it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments. *Pulaski Gas Light Co.* v. *McClintock,* 97 Ark. 584, 134 S. W. 1189. * * * It is not necessary that the effect of the act or omission complained of would in all cases, or even ordinarily, be to produce the consequences which followed, but it is sufficient if it is reasonably to be apprehended that such an injury might thereby occur to another while exercising

his legal right in an ordinarily careful manner, or, in other words, if the act or omission is one which the party ought, in the exercise of ordinary care, to have anticipated as likely to result in injury to others, then he is liable for any injury proximately resulting therefrom, although he might not have foreseen the particular injury which did happen. *Pulaski Gas Light Co.* v. *McClintock, supra; Foster* v. *Chicago, R. I. & P. Ry. Co.,* 127 Iowa 84, 102 N. W. 422, 4 Am. & Eng. Ann. Cas. 150; *Baltimore & Ohio Rd. Co.* v. *Slaughter,* 167 Ind. 330, 79 N. E. 186, 7 L. R. A. (N. S.) 597."

The above quotation, from *Helena Gas Co.* v. *Rogers,* 104 Ark. 59, 62, 147 S. W. 473, conforms to our view of the law as applicable to this case.

"There was no intermediate cause disconnected from the primary fault, and self-operating, which produced the injury, and such negligence was the proximate cause of it. *Milwaukee, etc., Ry. Co.* v. *Kellogg* [94 U. S. 469] *supra; The G. R. Booth,* 171 U. S. 450, 19 S. Ct. 9, 43 L. ed. 249; *Waters-Pierce Oil Co.* v. *Deselms* [212 U. S. 159, 29 S. Ct. 270] *supra." Pulaski Gas Light Co.* v. *McClintock,* 97 Ark. 576, 585, 134 S. W. 1189, 1199.

It may be said as a complete answer to the argument made by learned counsel for appellants that, had the receipts been properly written, and in the name of the owner, E. L. Free, the bank would not have been led into the error of delivering the cotton receipts to the wrong party. The compress company, by reason of its first error, made the wrongful delivery to one not entitled thereto.

It must necessarily follow that the judgment of the circuit court was correct. It is affirmed.