5-3597                                          391 S. W. 2d 13

Opinion delivered June 7, 1965.

*Mann & McCulloch,* for appellant.

*Daggett & Daggett,* By: *James R. Van Dover,* for appellee.

Sam Robinson, Associate Justice. Elizabeth Mc-Gowen and Emogene Gatling, sisters who were separated from their husbands, lived with their eleven children in a four room frame house at Forrest City. Elizabeth had five and Emogene had six children. Emogene worked at a hospital; Elizabeth stayed home and looked after the children.

On the night of March 3, 1964, about 9 p.m., Elizabeth and the eleven children were at home; Emogene was not there. It was raining, thundering and lightning; the house caught fire and burned down. Elizabeth and six of the children did not escape from the flames. Five children did escape; two of them, Evelyn Reese and one other, were burned to some extent.

Appellant herein, Hanna Reeves, mother of Elizabeth McGowen and Emogene Gatling, filed two suits against appellee, Arkansas Louisiana Gas Company; one as next friend of Evelyn Reeves, and one personally and as administratrix of the estate of Elizabeth McGowen, alleging that the gas company negligently failed to repair gas leaks in the house or to turn off the gas; that lightning struck the house igniting the escaped gas causing the injuries and damages complained of. The actions were consolidated and tried.

After the plaintiffs had rested, the court directed verdicts for the defendant. The verdicts were directed on the theory that it was not the duty of the gas company to repair or maintain the gas pipes and appliances in the house involved. This is ordinarily true, but here it is shown that the gas company had been notified about the odor of gas and took no steps to repair the leak or to shut off the gas. In a situation of this kind, the principle on which the court directed the verdicts may not apply.

But we have reached the conclusion that the directed verdicts were proper for another reason. There is no substantial evidence that a dangerous amount of gas had escaped; there is no showing that there was a gas explosion; there is no showing that gas burned in the house; there is no showing that escaped gas was the proximate cause of the damages complained of. It is firmly established that a correct ruling will not be reversed, although erroneous reasons may have been given for such ruling. *Millsaps* v. *Nixon,* 102 Ark. 435, 144 S. W. 915; *Union Life Insurance Co.* v. *Brewer,* 228 Ark. 600, 309 S. W. 2d 740; *Southern Farm Bureau* v. *Reed,* 231 Ark. 759, 332 S. W. 2d 615.

The only issue is whether there is any substantial evidence that there was an explosion of gas or that burning gas was a proximate cause of the tragedy. The appellant introduced evidence to the effect that for about three weeks immediately preceding the fire there had been a smell of gas in the house; that on three occasions the gas company had been notified and each time had

promised to investigate the matter, but failed to do so. In testing the correctness of the action of the trial court in directing the verdicts we must give the evidence of the plaintiff its strongest probative force. *Harper* v. *Mo. Pac. Rd. Co.,* 229 Ark. 348, 314 S. W. 2d 696.

First, appellant argues that it is the duty of the gas company upon being notified that gas is escaping in a house to either repair the leak or turn off the gas. But we need not discuss this point because there is no substantial evidence, direct or circumstantial, that gas was in any manner involved in the fire. In fact, the circumstantial evidence is to the contrary. There is no evidence that the smell of gas was any stronger on the night of the tragedy than when it was first noticed. During this time there had been open flames in the house daily. There were three gas stoves in the house, one in the living room, one in the front bedroom, and a cooking stove in the kitchen; all produced open flames. In addition, there was a pilot light on the cooking stove; sometimes it would go out and would be relighted with a match, and some of the occupants smoked cigarettes which they would light with an open flame. The evening of the fire the occupants had cooked supper on the kitchen stove. There is no showing that lightning would be more likely to ignite escaping gas than would any other kind of open flame. The fire started in the back bedroom. The children that were burned to death were in that room, but there was no stove or gas connection in that room.

Earnest Howard testified that he lives across the railroad tracks from the burned house; that he had laid down across the bed about 6:30 and was awakened by a loud explosion (the house burned about 9 p.m.); that it sounded like a sonic boom; that he looked out the window and saw the house on fire, flames were shooting out the windows and doors like a flamethrower. He further testified that the house was completely aflame when he first saw it and that it could have been burning for 30 minutes. "Part of the decking was still there." In view of Evelyn Reeves' testimony, Howard's state-

ment cannot be construed as substantial evidence going to prove that the noise he heard was an explosion of gas in the home that burned.

Evelyn testified that she was in the living room talking over the phone to a boyfriend, Charles Smith; that two other girls and her mother were in the living room; her mother was looking at TV. Evelyn stated that she heard a "boom"; that whatever the noise was it did not shake the house and she did not stop talking on the phone; that the first she knew of the fire she heard her mother, Elizabeth, say "Evelyn, this house is on fire. Help me get the children out." At that time her mother had not been injured; the flames were coming from the back bedroom.

Evelyn further testified that it was warm that evening; no stoves were needed; that she, Shirley Ann and her mother were in the living room; the thunder and lightning had been going on about two or three minutes at the time of the boom. "I don't know how long the fire had been burning before I heard the boom. It could have been burning five minutes or more." She first saw the fire coming from the back bedroom; none of the doors in the house were closed.

Emogene Gatling testified that she called home that night before the fire; that "Diana answered the phone and I said 'Let me talk to Elizabeth' and she said all of them was in bed and she said everything was o.k." She also testified that the house was loosely constructed and had no underpinning.

The evidence of Evelyn is that she was talking over the phone to a boyfriend; that her mother was looking at TV, and there were two other children in the living room at the time the fire started.

To sustain the argument that escaped gas in the house was a proximate cause of the fire, appellant cites several cases, but none of the cases would sustain a finding that there is substantial evidence that burning gas was a proximate cause of the fire. Appellant cites the following Arkansas cases:

*Gibson Oil Co.* v. *Sherry*, 172 Ark. 947, 291 S. W. 66. The oil company drained gasoline into the street. No doubt about the gasoline catching fire and causing the damage.

*Little Rock Gas & Fuel Co.* v. *Coppedge*, 116 Ark. 334, 172 S. W. 885. Occupants of house were asphyxiated by gas. No doubt about cause of injury and deaths. The only question was whether the gas company had negligently allowed the pressure in the pipes to get so low that stoves went out and then the gas pressure was increased.

*City Electric Street Ry. Co.* v. *Conery*, 61 Ark. 381, 33 S. W. 426. There was substantial evidence that electric company negligently allowed electricity to escape. The positive and uncontradicted evidence was that the electricity injured a pedestrian who came in contact with a wire charged with electricity.

*Arkansas Louisiana Gas Co.* v. *Strickland*, 238 Ark. 284, 379 S. W. 2d 280. The only point on appeal was that the judgment was excessive.

*Dixie Furniture Co.* v. *Deason*, 226 Ark. 742, 293 S. W. 2d 706. The furniture company moved a stove; left pipe uncapped; no doubt that escaping gas exploded.

*Tri-County Gas & Appliance Co.* v. *Charton*, 229 Ark. 989, 320 S. W. 2d 103. No doubt that escaping butane gas caused fire.

*Sinclair Refining Co.* v. *Gray*, 191 Ark. 175, 83 S. W. 2d 820. Injury to four year old boy caused by an explosion of gas tank owned by appellant.

*Martin* v. *Camden Gas Co.*, 179 Ark. 481, 17 S. W. 2d 309. Gas meter exploded causing fire.

*Pine Bluff Water & Light Co.* v. *Schneider*, 62 Ark. 109, 34 S. W. 547. Gas pipe was broken and leaking; explosion occurred when employee struck match looking for leak.

*Pulaski Gas Light Co.* v. *McClintock*, 97 Ark. 576, 134 S. W. 1189. McClintock was found dead with his face over an open gas pipe.

In none of the foregoing cases was there any question about the proximate cause. There were serious questions about evidence of negligence, but not about the proximate cause. The proximate cause was shown in each case. Here, there is no showing of the proximate cause of the fire.

To say what caused the fire would be pure speculation, sustained by no substantial evidence. It could have been caused by lightning, but no one says that lightning struck the house. At the time Eveleyn heard a boom she was talking over the phone; it did not interrupt her conversation; it did not shake the house. But regardless of what started the fire, there is no evidence that any gas was ignited. There was no explosion in the house; Evelyn was not injured while talking over the phone; her mother had not been injured at the time she said "This house is on fire." There is no indication that there was any more gas in the house than there had been for about three weeks, during which time there had been open flames in the house much of the time. True, the fire spread rapidly, but the evidence is that the frame house was loosely constructed, there was no underpinning, and the windows and doors were open. The fire had gained headway when Elizabeth made the remark about the house being on fire. Flames were coming from the back bedroom, but as heretofore mentioned, there was no gas connection or outlet in that room.

An analogous principle regarding proximate cause was involved in the case of *Jeffery* v. *Gordon,* 236 Ark. 180, 365 S. W. 2d 128. There, Gordon parked a truck loaded with hay near an overpass which was under construction by Jeffery. The hay caught fire, causing considerable damage to the overpass. Jeffery filed suit against Gordon alleging that the defendant negligently parked the hay, a highly inflammable and combustible commodity, in close proximity to the overpass. As in the case at bar, the trial court directed a verdict for the defendant. In affirming the judgment this court held that although assuming the defendant was negligent in parking the hay near the overpass, it was not shown that

such negligence was the proximate cause of the resulting fire. The court said: "The law is well settled in this State that before one can be held liable for an alleged negligent act, the act must be the proximate cause of the injury complained of . . ." Likewise, in the case at bar, assuming that the defendant was negligent in not turning off the gas, there is no substantial evidence that the gas exploded or burned; there is no showing that the assumed negligence was a proximate cause of the fire.

In *Kapp* v. *Sullivan Chevrolet Co.*, 234 Ark. 395, 353 S. W. 2d 5, the court quoted from *Glidewell* v. *Arkhola Sand & Gravel Co.*, 212 Ark. 838, 208 S. W. 2d 4, as follows:

" 'Conjecture and speculation, however plausible, cannot be permitted to supply the place of proof,' and in *Turner* v. *Hot Springs Street Railway Company*, 189 Ark. 894, 75 S. W. 2d 675, we find this language:

'The trial court was correct in directing a verdict for appellee, because the testimony adduced by appellant was not sufficient to show that the injuries received were proximately due to any negligence of appellee. No witness testified that appellant's fall was proximately due to the small pieces of snow and ice afterwards seen in the vestibule of the street car. It is true, the jury might have guessed or speculated that her fall was caused by stepping upon the small pieces of ice and packed snow in the vestibule of the street car, but, on the other hand, it was equally probable that her fall was caused by packed snow or ice which had accumulated on her own shoes. The point is, juries are not permitted to guess or speculate as to the proximate cause of an alleged injury, the burden resting upon appellant to show by a preponderance of the evidence that her injuries were caused by some negligent act or omission of appellee.'

In the same case, quoting from an earlier case, we said:

'It is not allowable, under the rules of evidence, to draw one inference from another, or to indulge presump-

tion upon presumption to establish a fact. Reasonable inferences may be drawn from positive or circumstantial evidence, but to allow inferences to be drawn from other inferences, or presumptions to be indulged from other presumptions, would carry the deduction into the realm of speculation and conjecture.' "

Affirmed.